HENRY HEIMAN et al., Appellants, v CITY OF NEW YORK, Respondent.

First Department, February 11, 1982

**APPEARANCES OF COUNSEL**

*Sheldon J. Tashman* for appellants.

*Carolyn E. Demarest* of counsel (*Allen G. Schwartz, Corporation Counsel,* attorney), for respondent.

**OPINION OF THE COURT**

SANDLER, J.

On July 20, 1978, at about 9:30 A.M., the plaintiff, Henry Heiman, 58 years old, was observed by a police officer unconscious, lying face down, and bleeding from his head and mouth, on the sidewalk at the northeast corner of Amsterdam Avenue at 105th Street. The officer called for an ambulance and the plaintiff was taken to St. Luke's Hospital. The hospital record entries describe his injuries as head trauma, loss of consciousness, ecchymosis and swelling of the subdural region of the head. Plaintiff was discharged on July 24, 1978.

On September 3, 1978, plaintiff went to the emergency room of the hospital complaining of weakness in his right hand and episodes of difficulty in speaking. He was admitted to the hospital and remained in the hospital until September 22, 1978. The diagnosis included cerebral vascular accident and chronic subdural hematoma. Plaintiff underwent neurosurgery for drainage of the hematoma, and a lumbar puncture. He was discharged on September 22, 1978.

Plaintiff was again admitted to the hospital on October 11, 1978, with an admitting diagnosis of reaccumulation of the left subdural hematoma. He was discharged on January 17, 1979.

Shortly after plaintiff's discharge, he retained counsel who, without applying for judicial authorization, filed on his behalf a notice of claim on January 30, 1979 alleging that plaintiff had fallen as a result of a defective condition of the sidewalk which was attributed to the city's negligent failure to maintain and repair. Plaintiff was orally examined by defendant on April 25, 1979.

In an order dated July 17, 1979, Special Term denied a motion for leave to file a notice of claim *nunc pro tunc* on behalf of plaintiff Henry Heiman without prejudice to renewal upon attachment of hospital records, and denied a companion motion for such leave as to plaintiff's wife. Thereafter, Heiman and his wife commenced this action against the City of New York.

A new motion to permit filing of the notice of claim *nunc pro tunc* was denied at Special Term in the order appealed from on the ground that "[n]o adequate showing of incapacity has been made to justify under General Municipal Law, § 50-e(5) the relief sought herein." We disagree and modify the order to the extent of granting the motion of Henry Heiman to file a notice of claim *nunc pro tunc*.

In 1976, the Legislature responded to the pointed suggestion of the Court of Appeals in *Camarella v East Irondequoit Cent. School Bd.* (34 NY2d 139, 143) that "[T]he need for legislative reconsideration of the harsher aspects of section 50-e is apparent", and extensively revamped provisions of that section governing the circumstances under

which courts may properly extend the time to serve a notice of claim beyond the prescribed 90-day period.

As here pertinent, subdivision 5 of section 50-e of the General Municipal Law was amended to provide: "In determining whether to grant the extension, the court shall consider, in particular, whether the public corporation *** acquired actual knowledge of the essential facts constituting the claim within the time specified in subdivision one or within a reasonable time thereafter. The court shall also consider all other relevant facts and circumstances, including: whether the claimant was *** physically incapacitated *** and whether the delay in serving the notice of claim substantially prejudiced the public corporation in maintaining its defense on the merits."

The report of the Committee to Advise and Consult with the Judicial Conference on the Civil Practice Law and Rules, which drafted the revised law in the form accepted without change by the Legislature, described in illuminating detail the significant changes intended to be introduced. (See Twenty-First Ann Report of NY Judicial Conference, 1976, p 282 *et seq.*) In its introductory discussion, the committee noted (p 286) that "the functional purpose of the notice of claim is to protect a public corporation against stale or unwarranted claims and to enable it to investigate claims timely and efficiently". The central purpose of the proposed amendments was defined, in the language of the Court of Appeals in *Camarella* (*supra*, pp 142-143) to achieve "a more equitable balance, *** between a public corporation's reasonable need for prompt notification of claims against it and an injured party's interest in just compensation." In words singularly applicable here, the report said (Twenty-First Ann Report of NY Judicial Conference, 1976, p 288): "It is intended that older judicial decisions construing the provisions of section 50-e rigidly and narrowly will be inapplicable as a result of these remedial amendments which will enable the courts to apply these provisions in a more flexible manner to do substantial justice."

Commenting specifically on the proposed reformulation of subdivision 5 of section 50-e of the General Municipal Law, the committee observed (*id.,* pp 300-301): "The pro-

posed amendment to subdivision 5 would significantly extend the discretion of the court to grant leave to file a late notice of claim. The subdivision, as amended, reflects a substantial change of policy in respect to applications for leave to file late notices of claim, giving the court greater flexibility in exercising discretion in this area * * * The proposed amendment to subdivision 5 would give the court broad discretion, upon application, to extend the time to serve a notice of claim beyond the 90-day limit prescribed in paragraph (a) of subdivision 1."

As to that part of the amendment concerned with the effect of physical or mental incapacity on the granting of an application to file a late notice, the committee noted the following significant, here pertinent, change (Twenty-First Ann Report of NY Judicial Conference, 1976, p 301): "[U]nder the proposed new statute the court would be free to consider such disability as an element bearing on the court's determination even though the disability may not have been the reason for the failure to serve the late notice".

When the facts presented on this appeal are evaluated in light of the new statutory formulation, and its clearly stated purposes, we are unable to agree that denial to this plaintiff of an opportunity to have his claim adjudicated on the merits represents, or comes close to representing, an "equitable balance * * * between a public corporation's reasonable need for prompt notification of claims against it and an injured party's interest in just compensation." (*Camarella v East Irondequoit Cent. School Bd.,* 34 NY2d 139, 142-143, *supra.*) Central to the amended subdivision 5 of section 50-e of the General Municipal Law, is a direction to the courts to consider "in particular, whether the public corporation * * * acquired actual knowledge of the essential facts constituting the claim within the time specified in subdivision one or within a reasonable time thereafter." The words "reasonable time" are not defined, the obvious statutory intent being to permit courts large discretion after consideration of "all * * * relevant facts and circumstances" to determine what is reasonable. Consistent with this purpose, courts have repeatedly sustained as having been brought within a reasonable time applications

brought a longer period of time after the expiration of the prescribed 90-day period than the notice of claim here served on the city. (See *Beatty v County of Saratoga,* 74 AD2d 662 [4 months]; *Matter of Wemett v County of Onondaga,* 64 AD2d 1025 [7 months]; *Bureau v Newcomb Cent. School Dist.,* 74 AD2d 133 [9 months]; *Palazzo v City of New York,* 444 F Supp 1089 [12 months].)

In this case the notice of claim, giving the city "actual knowledge of the essential facts constituting the claim", was served some three and one-half months after the expiration of the 90-day statutory period. From the hospital records it is established that plaintiff was hospitalized during the relevant period for almost four months. It is a fair inference that plaintiff additionally suffered from some degree of disability during periods of time preceding his several entries into the hospital and following his discharges from his hospital stays. Indeed it would seem quite likely that during the greater part of the period with which we are concerned, and perhaps all of it, plaintiff was more concerned with the condition of his health than with deciding whether, and if so, how to commence a lawsuit against the city within an abbreviated period of statutorily prescribed time of which he, like virtually all laymen, and many lawyers, was wholly unaware, and which diverges dramatically from the period of time usually provided by law for commencement of negligence and other actions.

Significantly, having previously been twice hospitalized for a total of some 23 days, plaintiff commenced his last and most extended hospital stay some 83 days after he had been observed unconscious on a city sidewalk. This period of hospitalization, extending over three months, accounts for all but a few days of the delay involved in this case. It seems reasonable to infer that plaintiff determined to institute this lawsuit during this lengthy period, quite possibly influenced by a growing and more acute appreciation of the seriousness of the injuries that he may have sustained. The record is clear that upon discharge from the hospital, he promptly retained counsel and counsel quite expeditiously served a notice of claim.

It is no doubt possible that there were periods of time during the first 90 days in which plaintiff was physically

able to communicate with a lawyer if he had determined at that time to sue. This might have been a barrier to his application under the law as it was prior to the 1976 amendments, but as noted earlier, a specific purpose of the amendments was to eliminate the requirement that disability be the reason for the delay, and to permit it to be evaluated as "an element bearing on the court's determination."

The amended statute (General Municipal Law, § 50-e, subd 5) further directs the courts to consider whether the delay "substantially prejudiced the public corporation in maintaining its defense on the merits." The city has urged the court to make a finding of "substantial prejudice" on the basis of the speculative possibility that the condition of the sidewalk in issue may have undergone a deterioration during the three and one-half month period that elapsed between the expiration of the statutory period and the filing of the notice of claim. The argument is unpersuasive.

As a matter of ordinary human experience, it is at best improbable that during that short interval of time the condition of the precise area of the sidewalk on which plaintiff was found unconscious, although in good repair on the date of the incident and for 90 days thereafter, suddenly developed a significant break consistent with plaintiff's claim. Inherently unpersuasive, the city's argument is further impaired by the omission from its papers of any suggestion that the sidewalk in question was examined promptly after the notice was received or indeed that it was examined at any time during the many months that elapsed before the motion was filed resulting in the order here under review.

If, as seems likely, the city did not undertake to examine the sidewalk when it acquired actual knowledge of the relevant facts, there appears no reason to conclude that such an inspection would have taken place if the notice of claim had been filed within the statutory period. It was as much in the interest of the city to determine the condition of the sidewalk when the notice of claim was filed as it would have been if the notice of claim had been filed within the statutory period. Nothing in the papers submitted by the city suggests a reason why the city would have re-

sponded promptly to a timely filed notice of claim although it appears not to have responded at all to the notice of claim actually filed. Indeed there appears no clear assertion in the city's papers that such an examination would in fact have been undertaken.

Even more decisive on the issue of substantial prejudice is the omission from the city's papers of any claim that the police officer who found plaintiff lying unconscious on the sidewalk was interviewed in an effort to determine whether he had observed the condition of the surrounding sidewalk. The fact that the police officer recorded no observation in his official report as to the condition of the sidewalk does not mean that he did not in fact look at the immediate area. If, as seems at least possible, and perhaps likely, the officer had looked at the sidewalk to determine what had occurred, and had remembered what he had seen, that fact by itself, whatever his observations were, would have eliminated any plausible claim by the city that it was substantially prejudiced.

If the officer had observed the sidewalk to be in good condition, the city would have a powerful witness on the merits of this litigation and could not reasonably claim substantial prejudice from the late notice of claim. If the officer had observed a defective condition in the sidewalk consistent with a fall by the plaintiff, the merit of the plaintiff's lawsuit would be significantly confirmed. Plaintiff should not be denied an opportunity to litigate on the merits on the basis of a finding of substantial prejudice where the city did not undertake the most minimal effort to determine the existence of facts that would have eliminated any possibility of prejudice and might in fact have confirmed the validity of plaintiff's claim.

From time to time respected scholars have raised pointed questions as to the fundamental fairness of New York's notice of claim statute and similar statutes, questions that in part continue to be pertinent even in the light of the 1976 amendments. (See, e.g., Graziano, Recommendations Relating to Section 50-e of the General Municipal Law and Related Statutes, Twenty-First Ann Report of NY Judicial Conference, 1976, p 358; Farrell, Civil Practice, 28 Syracuse L Rev 379; Farrell, Civil Practice, 30 Syracuse L Rev

385.) Criticism has focused on the apparent inequality of a statutory arrangement under which persons injured as a result of the negligent acts of private persons or organizations have three years within which to commence a lawsuit (CPLR 214, subd 5), without any requirement of prior notice, whereas those injured as a result of the claimed negligent acts of public corporations are required to give notice to the corporation within three months. Inevitably significant numbers of injured persons with just claims against public corporations have been denied the right to an adjudication of their claims on the merits on the basis of a failure to comply with a severely abbreviated period of notice requirement of which few lay people know and which departs significantly from the usual periods of time in our society to commence lawsuits. The burden of notice of claim statutes clearly falls most heavily on those who do not have a professional or personal relationship with lawyers of a kind that makes it customary to seek legal advice, as well as on those whose life experience has not accustomed them to view as normal the commencement of lawsuits.

These and other criticisms raise issues appropriate for legislative consideration. We note that the Report of the Committee to Advise and Consult with the Judicial Conference on the Civil Practice Law and Rules, alluded to earlier, concluded that (Twenty-First Ann Report of NY Judicial Conference, 1976, p 307) "[o]ther areas of change * * * might be considered in the future".

In the instant case we are satisfied that the denial to this plaintiff, at Special Term, under the circumstances disclosed, of the right to litigate his claim on the merits did not represent an "equitable balance" between the conflicting interests, and did not give appropriate meaning and effect to the 1976 amendments and their indisputably remedial purposes.

The order of the Supreme Court, New York County (WHITMAN, J.), entered November 27, 1979, denying plaintiff's motion to file a notice of claim, *nunc pro tunc,* should be modified, on the law, the facts and in the exercise of discretion, to the extent of granting the motion of the

plaintiff, Harry Heiman, without costs, and otherwise affirmed.

BIRNS, J.P., CARRO and SILVERMAN, JJ., concur with SANDLER, J.; BLOOM, J., concurs in the result only.

Order, Supreme Court, New York County, entered on November 27, 1979, unanimously modified, on the law, the facts and in the exercise of discretion, to the extent of granting the motion of the plaintiff Harry Heiman, without costs and without disbursements, and otherwise affirmed.