■ RUTHANN BULLARD, Appellant, v CITY OF NEW YORK, Respondent.—Order, Supreme Court, New York County (Richard Wallach, J.), entered on October 25, 1984, unanimously affirmed for the reasons stated by Richard Wallach, J., at Special Term, without costs and without disbursements. Concur—Sandler, J. P., Asch, Rosenberger and Ellerin, JJ.

Kassal, J., concurs in a memorandum as follows: Special Term properly denied appellant's application for leave to file a late notice of claim, pursuant to General Municipal Law § 50-e (5). To conclude otherwise on this record would emasculate the standard enacted by the Legislature.

On October 29, 1982, appellant's son, Stacey, was on the subway tracks at 135th Street and St. Nicholas Avenue, when he was electrocuted, struck by a passing train and killed. Shortly prior to this occurrence, at about 7:30 the same evening, he had been seen engaging in bizarre behavior, running and jumping up and down on St. Nicholas Avenue, walking in front of vehicles and crawling under a vehicle stopped at a traffic light. A railroad clerk observed him come into the subway station and fall backwards over a turnstile, striking his head, before he "entered" the subway tracks. He was pronounced dead on arrival at Bellevue Hospital and the matter was referred to the police missing person's unit to investigate and ascertain his identity. The investigation was unsuccessful and he was buried anonymously in Potter's Field on November 11, 1982.

Appellant seeks to recover damages for her mental suffering

resulting from the city's failure to notify her of her son's death and his subsequent burial in Potter's Field. When Stacey did not return home on October 29 and 30, 1982, after expiration of the required 24-hour waiting period, appellant filed a missing person's report on October 31, 1982. However, it was not until July 11, 1983, more than eight months later, that she was advised of her son's death and place of burial. Although she claims that the news of his death was devastating, she, nevertheless, did report to her office the next day, July 12, and went to see her employer's medical director. Some months later, she consulted an attorney at Legal Aid and was advised that her salary level made her ineligible for legal assistance. In December 1983, she was referred by the NAACP to an attorney, whom she retained in January 1984. Between January and April 1984, her attorney actively represented her by attempting to secure the police department records of the investigation under the Freedom of Information Law (Public Officers Law art 6). However, no notice of claim was ever filed. She retained her present counsel in August or September 1984 and a motion for permission to file a late notice of claim was made one month later, by order to show cause issued October 3, 1984.

Special Term denied the application, finding the proof adduced insufficient to substantiate the claim that plaintiff's mental condition prevented service of a notice of claim. I agree but, in my view, application of well-settled legal principles to the facts in this case warrants further elaboration and treatment.

On an application for permission to file a late notice of claim against a government authority, it has been consistently held that the party seeking relief must give a satisfactory explanation for the delay (*Matter of Morris v County of Suffolk,* 88 AD2d 956, *affd* 58 NY2d 767; *Rodriguez v City of New York,* 86 AD2d 533; *Matter of Persi v Churchville-Chili Cent. School Dist.,* 72 AD2d 946). Here, there was an unexcused delay of more than one year and three months in furnishing the required notice.

### MENTAL CAPACITY

In moving for relief, appellant claimed that when she learned of her son's death, she became "severely depressed and confused", was "not able to maintain my train of thought for any length of time" and "have alot *[sic]* of trouble sleeping at night." Undoubtedly, a tragic loss under these circum-

stances is emotionally upsetting and may cause depression. But, without further factual proof, it does not rise to the level of "mental incapacity".

Unquestionably, depression may range from severe and immobilizing, on the one hand, to mild and nondebilitating, on the other. However, the short, two-paragraph statement from her employer's medical director, Dr. Brayton, is palpably insufficient in that it is a general statement without specifics. He briefly reported that appellant was "distressed and grieving over the death of her son" and that she was referred to a counselor and a psychiatrist for treatment. The record, however, does not include a statement from either of these professionals as to whether treatment was ever rendered, and, if so, what it consisted of and their diagnoses. The absence of any definitive medical opinion by Dr. Brayton is somewhat perplexing, especially in view of the appellant's claim in her affidavit that she had been "seeing" Dr. Brayton, who was her employer's psychiatrist. Appellant has not disclosed the name of the psychiatrist to whom she was allegedly referred by Brayton, nor does Brayton state that he in fact treated her. While Dr. Brayton opined that depression will "frequently" result in an inability to make decisions, no opinion was offered specifically dealing with plaintiff's condition or indicating that it incapacitated her for *any* period of time, thereby preventing her from filing a notice of claim.

Clearly, the physician's statement does not set forth the extent of plaintiff's disabling condition with sufficient particularity so as to enable us to conclude that she was actually "incapacitated" within the terms of the statute. It does not contain "enough information from which the extent and duration of petitioner's disability can be ascertained" *(Matter of Klobnock v City of New York,* 80 AD2d 854). Nor does it establish that she was "disabled for such a substantial period of time following the accident so as to prevent [her] filing a timely notice of claim." *(Supra.)*

*Rodriguez v City of New York (supra),* also involving a one-year delay, is instructive. In that case, we affirmed an order denying leave to serve a late notice after finding the supporting affidavit "superficial" and insufficient to explain the delay or whether any medical attention was sought during the one-year period: "Upon the superficial affidavit submitted by the plaintiff, this court is left to speculate as to exactly what the plaintiff did and to whom he spoke during that period of

delay. The plaintiff's silence on this point is totally unsatisfactory." *(Supra,* p 533.)

While I sympathize with the appellant on her great loss and the plight of all those in a similar situation who seek to file late notices of claim, the Legislature has prescribed firm standards and we may not disregard the clear language of the statute. The fact that plaintiff was unaware that the law imposed a requirement that a notice of claim be filed within a certain period of time is insufficient as a legal excuse *(Figueroa v City of New York,* 92 AD2d 908). Thus, the claim here that she was never advised a notice had to be filed is without dispositive effect.

Appellant's alleged incapacity is not demonstrated on this record. Although she asserts that her depression prevented her from carrying on her usual activities, she, nevertheless, was able to return to her place of employment the day after she was notified of her son's death and consulted three separate attorneys during the subsequent one-year period. The record does not reflect the reason a notice of claim was not filed by any of the attorneys but it has been repeatedly held in this and other departments that such failure, if due to the inadvertence of counsel, is insufficient and does not permit an extension of the statutory period *(Matter of Shankman v New York City Hous. Auth.,* 21 AD2d 968, *affd* 16 NY2d 500; *Jefferson v New York City Hous. Auth.,* 24 AD2d 943; *Williams v Town of Irondequoit,* 59 AD2d 1049; *cf. Almedia v State of New York,* 70 AD2d 712).

### KNOWLEDGE OF CLAIM VS. KNOWLEDGE OF OCCURRENCE

Nor does it appear that the city had actual knowledge of the *claim,* so as to excuse the failure to file. In determining whether to allow the filing of a late notice, the statute permits the court to take into account all of the relevant factors, including, *inter alia,* whether there was "actual knowledge of the essential facts constituting the claim" (General Municipal Law § 50-e [5]). Here, while the record reflects that the city had notice or knowledge of the *occurrence of the death* (the death certificate, autopsy result and report of investigation to identify the person who had been found on the subway tracks), it does not establish that it had any knowledge of the basis of *the claim* made by appellant. Under the statute, the document or record relied upon to establish knowledge on the part of the municipality must "connect" the occurrence with

negligence by the public corporation *(Caselli v City of New York,* 105 AD2d 251, 258). This requirement was not altered in any respect by the 1976 legislative amendment (L 1976, ch 745, § 2). What the statute requires to excuse the filing is knowledge of the claim, not notice of the underlying wrong. This distinction was delineated over 50 years ago, in 1931, by Chief Judge Cardozo in *Thomann v City of Rochester* (256 NY 165, 172), interpreting a local ordinance which required that claims against the municipality be submitted within 30 days after the damages were sustained and setting forth the form and contents of such notice and manner of service: "What satisfies the statute is not knowledge of the wrong. What the statute exacts is notice of 'claim.' * * * The Legislature has said that a particular form of notice, conveyed with particular details to particular public officers, shall be a prerequisite to the right to sue. The courts are without power to substitute something else."

As applied here, the record is barren of any documentary showing to conclude that the city had knowledge of the type of claim made by appellant in this action, as distinguished from notice of the fact of death. It is important to bear in mind that the present action seeks to recover only for appellant's emotional distress, not the wrongful death of the decedent. This is a significant distinction, particularly taking into account the underlying purpose of the notice requirement, namely, to afford the municipality "an adequate opportunity to investigate the circumstances surrounding the accident and to explore the merits of the claim while information is still readily available [citations omitted]" *(Teresta v City of New York,* 304 NY 440, 443; *see also, Caselli v City of New York,* 105 AD2d, at p 260).

Thus, the notice of claim provision affords the city an opportunity to determine, while the facts are fresh, which claims should be settled and which contested. Here, the long delay of more than one year and three months deprived defendant of its opportunity to investigate as to the steps taken by the police officers in response to appellant's missing person's report. In that respect, it would be prejudicial from the passage of time alone. Such an investigation would directly bear upon the negligence issue in the action. While the city, in regular course, did conduct an investigation in an attempt to establish the decedent's identity, it has been observed that "[i]nformation obtained by a municipal agency conducting an investigation in the normal course of business,

however, cannot generally substitute for an investigation undertaken after service of a timely notice of claim." *(Tarquinio v City of New York,* 84 AD2d 265, 270.) In any event, even were there no prejudice, it has been recognized that "the presence or absence of any one factor is not determinative" *(Matter of Morris v County of Suffolk,* 88 AD2d, at p 957).

Taking into account all of the facts and circumstances and applying the statutory criteria, I find the record insufficient to grant permission to file a late notice of claim. There was an inordinate and unexcused delay in furnishing notice and an absence of competent proof to establish that appellant was incapacitated for a substantial period of time, thus preventing the filing of a timely notice of claim, or that defendant had actual knowledge of the essential facts constituting the claim within the 90-day period *(see, Matter of Persi v Churchville-Chili Cent. School Dist.,* 72 AD2d, at p 947; *Rodriguez v City of New York, supra).* As noted, the claimed disability did not prevent appellant's resumption of her usual, daily activities and timely retention of counsel. Inadvertence on the part of the attorney is no excuse.

Undoubtedly, in almost every situation where a claimant seeks to file a late notice of claim, the contention could be advanced that the claimant was suffering from depression. To permit a late filing in such case would virtually eliminate all time limits for filing notices of claim. To excuse the unreasonable and inordinate delay here would emasculate the statutory standard embodied in General Municipal Law § 50-e (5) *(see, Matter of Morris v County of Suffolk,* 88 AD2d, at p 957; *see also, Caselli v City of New York,* 105 AD2d, at p 260; *Rodriguez v City of New York, supra),* and merely substitute the requirement that the city must show prejudice. While, in terms of fairness, one may personally disagree with the notice of claim procedure, in carrying out our judicial function, we may not disregard the clear language and mandate of the statute. As observed by Justice Sandler in *Heiman v City of New York* (85 AD2d 25, 32), "These and other criticisms raise issues appropriate for legislative consideration." They are not matters for judicial legislation.

Accordingly, the order, Supreme Court, New York County (Richard W. Wallach, J.), entered October 25, 1984, denying plaintiff's motion for leave to file a late notice of claim, should be affirmed.