Mouzalas v City of New York (2003 NY Slip Op 51637(U))

[*1]

Mouzalas v City of New York

2003 NY Slip Op 51637(U)

Decided on December 9, 2003

Supreme Court, New York County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 9, 2003

Supreme Court, New York County
 PATRICIA MOUZALAS and CHARLES MOUZALAS, Petitioners,
against
CITY OF NEW YORK, HUDSON RIVER PARK TRUST and VERIZON OF NEW YORK, Respondents.
INDEX NO. 109302/03

DORIS LING-COHAN, J.
The following papers, numbered 1 to 4 were read on this motion for : LATE NOTICE OF CLAIM:
Papers Numbered
Notice of Motion/Order to Show Cause - Affidavits - Exhibits _________ _______1,2______
Cross-Motion: [ ] Yes [ X ] No
Upon review of the foregoing documents, it is ordered that petitioners' application to serve a late notice of claim upon the Hudson River Park Trust ("HRPT") is granted as detailed below.
Petitioners seek to serve a late notice of claim on respondent HRPT for personal injuries allegedly sustained by petitioner Patricia Mouzalas on September 29, 2002, when she fell while rollerblading on the bicycle path along West Street, in the vicinity of 30th Street. Petitioners allege that she fell on a sunken portion of asphalt, measuring 8 feet in length and 4 feet in width, which was excavated and improperly backfilled and capped by a contractor.
Petitioners state that "[i]t is not clear at this time what entity is responsible for the bike path." [OSC, Aff. of Gene L. Chertock. Esq.]. Since "West Street and the piers and the sidewalks were obviously City thoroughfares" and "West Street also was at one time (and still may be) a state arterial highway," petitioners served a notice of claim upon the City and State on December 19, 2002. On March 31, 2003, based upon petitioners' request under the Freedom of Information Law, the New York City Department of Parks and Recreation informed petitioners that "the bike path . . . is actually under the jurisdiction of Hudson River Park Trust, rather than New York City / Parks & Recreation." [OSC, Exh. F].
[*2]
The HRPT is a "public benefit corporation" created by the New York State legislature in 1998 by enactment of the Hudson River Park Act (the "Act"). When bringing a claim for personal injuries against HRPT, section 11 of the Act and General Municipal Law § 50-e require service of a notice of claim within 90 days of the accident. Additionally, section 11 provides that the action must be commenced within one year of the accident.[FN1] As such, the latest possible date that petitioners could have filed a notice of claim against HRPT, while remaining within the statutory requirements of General Municipal Law § 50-e(5), was December 30, 2002. Petitioners served HRPT with a notice of claim on May 28, 2003. While their claim falls within the Act's one year statutory limit, the notice of claim is untimely by approximately five months. On or about June 2, 2003, petitioners filed the within application for an order granting leave to file a late notice of claim upon HRPT, which HRPT opposes. No other defendant has submitted papers in response to the instant petition.
Petitioners' argument with respect to the service a notice of claim on HRPT is two-fold. First, they contend that the timely service of a notice of claim on both the City and State constitutes timely service on HRPT. Petitioners purport that since HRPT is "in actuality a partnership between the City and State," HRPT should be deemed to have been served by service on its partners.[FN2] [OSC, Aff. of Gene L. Chertock, Esq.]. Petitioners further contend that, while the Act requires service of a notice of claim, it does not designate an agent or clearly state that the notice of claim must be served on HRPT itself. Instead, petitioners argue that the Attorney General appears to be the designated legal arm of HRPT.[FN3] [OSC, Exh. J, §7(1)(d)(viii)]. In [*3]opposition, HRPT argues that "HRPT is a distinct legal entity that cannot be charged with notice by virtue of claims served on other public entities." [Aff. of Bradley J. Corsair, Esq., ¶5].
The Court finds that service of the notice of claim on the City and State does not constitute service on HRPT. As a "public benefit corporation," HRPT is a distinct legal entity with its own governing statute, and is entitled to direct service of a timely notice of claim. See Densico v. City of New York, 2003 WL 22351646 (1st Dept 2003) (affirming the lower court's denial of the application for the late filing of a notice of claim on HRPT, where the City and State were similarly served with notices of claim and the petitioner failed to show actual notice, lack of prejudice and provide a reasonable excuse); see also Gold v. City of New York, 80 AD2d 138 (1st Dept 1981) (holding that the "Board of Education and the City of New York are separate and distinct entities and service of a notice of claim upon the City does not constitute service upon the board."); Leventhal v. Health & Hosp. Corp. of the City of New York, 108 AD2d 730 (2d Dept 1985) (finding that the "Health and Hospitals Corporation and the City of New York are clearly separate and distinct entities"). Accordingly, the December 19, 2002 service of the notice of claim on the City and State does not suffice as service on HRPT and the May 28, 2003 notice of claim served on HRPT is untimely under General Municipal Law § 50-e.
The Court now turns to petitioners' second proposition, namely that this Court grant its application to serve HRPT with a late notice of claim. General Municipal Law § 50-e(5) gives courts discretion to grant an application to extend the time to serve a notice of claim provided that the extension shall not exceed the one year and ninety-day statute of limitations imposed by section 50-i. "The purpose underlying the notice of claim provision in General Municipal Law § 50-e is to protect the municipality against unfounded claims and to assure it 'an adequate opportunity...to explore the merits of the claim while the information is still readily available'.... However, it should not operate as a device to defeat the rights of persons with legitimate claims." Annis v. New York City Transit Auth., 108 AD2d 643 (1st Dept 1985) (citations omitted); see also Matter of Gerzel v. City of New York, 117 AD2d 549 (1st Dept 1986). Such statute "is remedial in nature and so should be liberally construed. . . ." Matter of Santana v. City of New York, 183 AD2d 665 (1st Dept 1992) (citations omitted).
In fact, the 1976 amendments to General Municipal Law § 50-e(5) gave courts "greater flexibility in exercising discretion" in granting leave to file a late notice of claim. See Heiman v. City of New York, 85 AD2d 25, 28 (1st Dept 1982); Barnes v. County of Onondaga, 103 AD2d 624, 627, aff'd 65 NY2d 664 (1984). As indicated by the Committee to Advise and Consult with the Judicial Conference on the Civil Practice Law & Rules, which drafted the amendments: "[i]t is intended that older judicial decisions construing the provisions of section 50-e rigidly and narrowly will be inapplicable as a result of these remedial amendments which will enable the courts to apply these provisions in a more flexible manner to do substantial justice." Twenty-first Ann Rep. of NY Jud. Conf., 1976, at 288; See Heiman, 85 AD2d at 27.
When deciding a motion to serve a late notice of claim, courts consider various factors, including the following: (1) whether the petitioner has demonstrated a reasonable excuse for the failure to timely serve a notice of claim; (2) whether the public corporation acquired actual knowledge of the essential facts constituting the claim within 90 days after the claim arose or a reasonable time thereafter; and (3) whether the delay substantially prejudiced the municipality defendant's ability to defend its case on the merits. See General Municipal Law § 50-e(5); Gelles [*4]v. New York City Hous. Auth., 87 AD2d 757 (1st Dept 1982); Strauss v. New York City Transit Auth., 195 AD2d 322 (1st Dept 1993); Diallo v. City of New York, 224 AD2d 339 (1st Dept 1996). The presence or absence of any one factor listed in the statute is not determinative of the motion. See Patterson v. Town of Hempstead, 104 AD2d 975, 975 (2nd Dept 1984); Matter of Savelli v. City of New York, 104 AD2d 943 (2nd Dept 1984). The list of factors provided in General Municipal Law 50-e is "directive rather than exclusive" (Barnes v. County of Onondaga, 103 AD2d 624, 629, aff'd 65 NY2d 664 (1984)), as the court must consider all relevant facts and circumstances. See Matter of Beary v. City of Rye, 44 NY2d 398, 407 (1978); Heiman v. City of New York, 85 AD2d 25 (1st Dept 1982).
Upon consideration of these factors, the Court finds that petitioners have made a sufficient showing to warrant late service of the notice of claim on HRPT. First, petitioners have demonstrated a reasonable excuse for the delay in serving a notice of claim upon HRPT. Petitioners contend that they could not promptly identify HRPT as a potential defendant. Specifically, petitioners' attorney affirms that until his office received the March 31, 2003 response from the New York City Parks Department, stating that the bike path was under the jurisdiction of HRPT, he had "never even heard of the trust." [OSC, Aff. of Gene L. Chertock, Esq.]. Prior to then, petitioners' attorney contends that it appeared that the location was under the jurisdiction of the City; further, "[n]either the City, nor the State sent back any letter or notice that the bike path was not theirs or that the notice of claim was improperly filed with them." [OSC, Aff. of Gene L. Chertock, Esq.]. In fact, the City held a 50-h hearing. In further support, petitioner Patricia Mouzalas also states that "[t]here were no signs anywhere near there to indicate who controlled the bike path. Until recently, I never heard of the Hudson River Park Trust and had no idea that they had any involvement with the bike path." [OSC, Aff. of Patricia Mouzalas].
James Koth, HRPT's Vice President of Operations and Maintenance, contends that "HRPT's identity should not have been a mystery, because there were enormous signs next to the bikeway both seven blocks south and thirteen blocks north of West 30th Street, that announced HRPT and its internet address to the public." [Aff. of James Koth, ¶10]. Mr. Koth further speculates that "[a]s a rollerblader using the bikeway, Mouzalas must have passed these signs, perhaps quite often," and "anyone doing an investigation after the alleged accident, logically would have followed the bikeway and encountered these signs." [Aff. of James Koth, ¶10].
Given HRPT's admission that the signs were in fact "seven blocks south and thirteen blocks north"of the accident site, petitioner's contention that she and her attorney were unaware of HRPT's jurisdiction is excusable. Moreover, GML §50-e(5) provides that "[i]n determining whether to grant the extension, the court shall consider, . . . whether the claimant in serving a notice of claim made an excusable error concerning the identity of the public corporation against which the claim should be asserted...."). See Gherardi v. City of New York, 294 AD2d 101 (1st Dept 2002) (holding that petitioners "made an excusable error concerning the identity of the public corporation against which the claim should be asserted and acted within reasonable time to correct the error...."). Accordingly, the Court finds petitioners' excuse to be reasonable under the circumstances.
Second, the Court finds that petitioners have demonstrated that HRPT acquired actual knowledge of the essential facts constituting the claim within 90 days after the claim arose or a [*5]reasonable time thereafter. In the Affidavit of James Koth, the Vice President of Operations and Maintenance at HRPT, Mr. Koth contends that "until May 28, 2003, HRPT had no knowledge that Mouzalas or anyone wanted to make a claim against HRPT for a September 29, 2002 accident, or for injuries allegedly sustained at the location mentioned above." [Aff. of James Koth, ¶ 5]. However, in the very next sentence, HRPT concedes that on or about January 15, 2003  a mere 16 days after the 90-day statutory limit  "HRPT did learn from the NYS Department of Transportation (DOT), that a claim was being made against DOT due to an alleged defect at the location." [Aff. of James Koth, ¶ 5a]. As further evidence of this fact, petitioners also submit a January 15, 2003 email communication from Osama Khalil of the NYS DOT to the office of petitioners' attorneys. In that communication, Mr. Khalil states:

I visited the location of the accident and was not able to determine the entity that did the patching work (8' x 4') in the [b]ike path (color photos enclosed). I believe that HRPT knows the answer but I have no luck in getting an answer from them[.] I can wonder if you can get in touch with them and try to get an answer from them.
[Reply, Exh. A]. Based upon such facts, the Court concludes that HRPT did receive actual knowledge of the claim as early as 16 days after the 90-day statutory limit.
The Court further finds that respondent HRPT has failed to demonstrate that it was severely prejudiced by petitioners' delay in filing their notice of claim against HRPT. HRPT argues that it was severely prejudiced because, when HRPT received petitioners' notice of claim on May 28, 2003, "it could no longer reliably ascertain what the involved bikeway surface looked like, back on the alleged September 29, 2002 accident date." [Aff. of Bradley J. Corsair, Esq. ¶6]. In further support of this argument, Mr. Koth alleges that a transient condition is involved here because the ground surface likely changed over time based on "the type of soil there and the proximity of the Hudson River." [Aff. of James Koth, ¶ 6].
Despite HRPT's contentions, the Court finds several noteworthy factors which negate the finding that HRPT would be severely prejudiced in this case. First, the alleged defect, a depression in the asphalt, measuring 8 feet by 4 feet, which was excavated and allegedly improperly back-filled and capped, is not transitory nor likely to dissipate over the period of delay. See Silva v. City of New York, 246 AD2d 465, 466 (1st Dept 1998); Williams v. New York City Hous. Auth., 125 AD2d 258, 259 (1st Dept 1986). Moreover, the photos taken by petitioners soon after the accident and those taken by the NYS DOT on or about January 15, 2003, show that the condition was substantially the same as when petitioner allegedly fell.
Second, in HRPT's response papers, HRPT fails to inform the Court that "the location" in question is actually on property which HRPT has a possessory interest in as lessee, and thus it was incumbent on it to investigate any defect which may have caused an accident, regardless of whether a notice of claim was filed against HRPT when it first received notice of the accident on January 15, 2003.[FN4] As a possessor of property, HRPT has a duty to maintain its property in a [*6]reasonably safe condition, regardless of whether a claim is brought against it. See Freidah v. Hamlet Gold & Country Club, 272 A.D.2d 572 (2nd Dept 2000). As such, any failure by HRPT to immediately inspect the accident site on or about January 15, 2003, when it concededly was notified by DOT that an accident had taken place on its property, does not support a finding of substantial prejudice.
Third, Mr. Koth's claim that "given the type of soil there and the proximity of the Hudson River, the ground surface likely changed over time" is speculative and not supported by any expert qualifications. [Aff. of James Koth, ¶ 6]. Moreover, while Mr. Koth argues that claimants' photographs "are not an adequate substitute for the visual inspection that [he] would have performed within 90 days of the alleged accident," he fails to submit any of his own photos which might be compared to those photos, and conceivably support his speculative conclusion that the surface was altered, "given the type of soil there and proximity of the Hudson River," as he claims. [Aff. of James Koth, ¶ 6,7]. Finally, HRPT's concerns that other entities may have tampered with the site, since the expiration of the 90-day statutory limit, are purely speculative and can be addressed during the discovery phase of litigation.
Accordingly, it is hereby ordered that petitioners' application to file a late notice of claim against HRPT is granted and the notice of claim annexed to the moving papers as exhibit L shall be deemed timely filed nunc pro tunc, upon service by petitioners of a copy of this decision and judgment, with notice of entry; and it is further ordered that petitioners shall serve a copy of this decision/judgment with notice of entry upon respondents within 60 days of entry.
This constitutes the decision and judgment of the Court.
Dated: 
 DORIS LING-COHAN, J.S.C.
Check one: [ X ] FINAL DISPOSITION [ ] NON-FINAL DISPOSITION
C:\htformat\f5163740.txt
Decision Date: December 09, 2003
Footnotes

Footnote 1:Section 11 of the Hudson River Park Act, Chapter 592 of McKinney's 1998 Sessions Laws, S. 7845, provides:

Notice of tort. In an action against the trust founded upon tort, (a) a notice of claim shall be required as a condition precedent to the commencement of an action or special proceeding against the trust or any officer, appointee or employee thereof, and the provisions of section 50-e of the general municipal law shall govern the giving of such notice . . . . No such action shall be commenced more than one year after the cause of action therefor shall have accrued, except action against the trust for wrongful death which is commenced in accordance with the notice of claim and time limitation provisions of title 11 of article 9 of the public authorities law.
Footnote 2:In support of petitioners' contention that the HRPT is part of a partnership, petitioners refer the Court to a press release issued by the Mayor and Governor's office on May 31, 2000, which states that the "park is a partnership between New York State and City . . . ." [OSC, Exh. G].

Footnote 3:Section 7(1)(d)(viii) of the Act provides that the HRPT's general corporate powers include the power "to submit legal matters to the attorney general of the state who may furnish any necessary legal services and advice required to assist the trust in accomplishing its corporate purposes."

Footnote 4:Section 7(3)(b) of the Act provides:

The State and the [C]ity of New York, each with respect to its real property in the park, shall expeditiously enter into agreements with the trust, whether by lease or otherwise, for a term not to exceed 99 years and execute such other instruments as necessary, whereby the trust shall receive a possessory interest in the real property and exercise its rights, powers, responsibilities, and duties, all in accordance with this act.