CHERYL BARNES, Appellant, et al., Plaintiffs, v COUNTY OF ONONDAGA et al., Respondents. (Appeal No. 1.)

CHERYL BARNES, as Administratrix of the Estate of HEATHER BARNES, Deceased, Appellant, et al., Plaintiffs, v COUNTY OF ONONDAGA et al., Respondents, et al., Defendants. (Appeal No. 2.)

Fourth Department, November 7, 1984

APPEARANCES OF COUNSEL

*James G. Distefano* for appellants.

*Sugarman, Wallace, Manheim & Schoenwald* (*Samuel Vulcano* of counsel), for County of Onondaga and another, respondents.

*Greene, Hershdorfer & Sharpe* (*Victor Hershdorfer* of counsel), for Town of Clay, respondent.

OPINION OF THE COURT

CALLAHAN, J. P.

These appeals stem from plaintiff's attempt to serve late notices of claim against the County of Onondaga (County), the Sheriff of Onondaga County (Sheriff) and the Town of Clay (Town) in actions arising out of an automobile accident which occurred on October 28, 1978. On that date, plaintiff Cheryl Barnes, her infant daughter, Heather, and son, Shawn, were passengers in an automobile which was involved in a head-on collision with another vehicle on Morgan Road, a County highway, in the Town of Clay. As a result of the accident, plaintiff suffered serious physical injuries which rendered her a quadriplegic, her 10-day-old daughter was killed and her three-year-old son was seriously injured. In October, 1981, plaintiff, both in her individual capacity and as parent and natural guardian of Shawn Barnes and as administratrix of the estate of Heather Barnes, commenced actions sounding in negligence against, *inter alia,* the County, Sheriff and the Town. The actions on behalf of the estate of Heather Barnes were for wrongful death and for conscious pain and suffering.

By motion returnable October 19, 1981, plaintiff sought leave to serve a late notice of claim against the County, Sheriff and Town in accordance with section 50-e of the General Municipal Law. In her moving papers, plaintiff asserted that the delay in filing a timely notice of claim was due to her medical condition, the quadriplegia which rendered her totally disabled from the date of the accident to the time of the application, and mental problems. She alleged that as a result of the accident she not only suffered serious injuries but suffered from emotional depression, was on constant medication and had not been concerned with any of her legal rights. In opposing plaintiff's application, respondents contend it was untimely and cross-moved to dismiss the complaint. Special Term (1) granted permission to file a late notice of claim on behalf of Shawn Barnes;

(2) denied permission to file a late notice of claim on behalf of the infant decedent Heather and dismissed the causes of action commenced on her behalf; and (3) ordered that a fact-finding hearing be held in accordance with *Matter of Hurd v County of Allegany* (39 AD2d 499) to determine the period of time, if any, during which plaintiff was disabled due to mental impairment. Plaintiff appeals from so much of this order as dismissed the infant-decedent's cause of action for conscious pain and suffering. There is no cross appeal from this order.

At the fact-finding hearing, plaintiff testified that following the accident she was hospitalized for six months at St. Joseph's Hospital. While at the hospital, she learned that her 10-day-old daughter had been killed in the accident and that she, herself, would never walk again. She was discharged to the Upstate Medical Center where she was attended by a specialist in rehabilitation for another six-month period. In addition to her other physical problems, she sustained facial scarring and severe head disfigurement which caused her to shy away from people. She testified that she was depressed, cried constantly and has never recovered from the loss of her baby. She first contacted a lawyer about the accident in August of 1981.

Dr. Leonard Goldfarb, a licensed psychiatrist, testified that he first saw plaintiff on January 16, 1979 in St. Joseph's Hospital. At that time she was suffering from a "posttraumatic depression". In response to a question as to whether or not plaintiff was, in his opinion, able to function in society, Dr. Goldfarb responded: "At the time I saw her, she was in bed. She was paralyzed from the neck down * * * She was very much worried about the problems that she was having * * * She was really having a great deal of difficulty in just being able to function." In his opinion, plaintiff's over-all ability to function in society was "severely" limited based upon her injuries, physical condition, "[a]nd mental problems that she was having at that time". He continued to treat her after her discharge from the hospital and indicated that at the time of the hearing plaintiff was "just healing a very severe depressive reaction" due to the loss of her child and her physical injuries.

In his opinion, plaintiff was suffering from "a psychiatric disorder" from the accident which "absolutely" limited her ability to function in society. On cross-examination it was established that plaintiff's depressive reaction was "more serious than a neurosis".

Following the hearing the court found that: "Although the Plaintiff Cheryl Barnes was shockingly injured in a physical nature, she failed to show that she was insane under the provisions of [section] 208 of the CPLR, as interpreted by *McCarthy v Volkswagen of America*" (55 NY2d 543). An order was entered dismissing plaintiff's complaint against the municipal defendants and denying her individual application to file a late notice of claim.

It is well settled that where a notice of claim has not been served within the 90-day period specified in subdivision 1 of section 50-e of the General Municipal Law, an individual possessing a tort claim against a public corporation may apply to the court pursuant to subdivision 5 of section 50-e for an extension of time within which to serve such notice upon the defendant (*Cohen v Pearl Riv. Union Free School Dist.*, 51 NY2d 256, 258). The Legislature has empowered the court with discretionary authority to extend the time to serve a notice of claim (General Municipal Law, § 50-e, subd 5, as amd by L 1976, ch 745, § 2). The court's authority, however, has its limitations. The extension may not exceed the "time limited for the commencement of an action by the claimant against the public corporation" (General Municipal Law, § 50-e, subd 5), which is "one year and ninety days after the happening of the event upon which the claim is based; except that wrongful death actions shall be commenced within two years after the happening of the death." (General Municipal Law, § 50-i, subd 1.) Accordingly, unless the statute has been tolled, the application for the extension must be made not more than 1 year and 90 days after the cause of action accrued (*Pierson v City of New York*, 56 NY2d 950; see, also, *Matter of Donovan v County of Niagara*, 100 AD2d 740). Since the accident herein occurred on October 28, 1978 and plaintiff's application was made in October, 1981, nearly three years after the accident, plaintiff's application is untimely as a matter of law unless there is a tolling of the Statute of Limitations (see CPLR 208).

CPLR 208 provides that "If a person entitled to commence an action is under a disability because of infancy or insanity at the time the cause of action accrues * * * the time within which the action must be commenced shall be extended to three years after the disability ceases". The legislative history of the statute indicates that the Legislature intended the toll for insanity to be narrowly interpreted (*McCarthy v Volkswagen of Amer., supra,* p 548). It is designed to extend the toll for insanity to only those individuals who are unable to protect their legal rights because of an over-all inability to function in society. The provisions of CPLR 208 tolling the Statute of Limitations period for insanity is a concept equated with unsoundness of mind (*De Gogorza v Knickerbocker Life Ins. Co.,* 65 NY 232, 237) and should not be read to include the temporary effects of medications administered in the treatment of physical injuries (*Eisenbach v Metropolitan Transp. Auth.,* 62 NY2d 973, 975), nor can the existence of a posttraumatic neurosis be equated with the term "insanity" as used in CPLR 208 (*Eisenbach v Metropolitan Transp. Auth., supra,* p 975; *McCarthy v Volkswagen of Amer., supra,* p 549). To the extent that our decision in *Matter of Hurd v County of Allegany* (39 AD2d 499, *supra*) may be read to stand for the proposition that the existence of a posttraumatic neurosis may be equated with the term "insanity" it should not be followed.

The condition of an individual's mental capabilities is largely a factual question (*McCarthy v Volkswagen of Amer., supra,* pp 547-549). The unrebutted testimony at the hearing demonstrated that plaintiff suffered from a "posttraumatic depression" and "a very severe depressive reaction" due to the loss of her child together with her serious, disfiguring physical injuries. The psychiatrist concluded that she was suffering from "a psychiatric disorder" that was "more serious than a neurosis". In addition, plaintiff established that because of the nature of her injuries, her physical condition and the mental problems, her over-all ability to function in society was "severely" limited. In our view, there was sufficient evidence to establish "insanity" within the purview of CPLR 208. Unlike the factual situation in either *McCarthy* or *Eisenbach* (*supra*), here, there was unrebutted testimony establishing

the existence of "a psychiatric disorder". Furthermore, it is evident from the record that plaintiff was "unable to protect [her] legal rights because of an over-all inability to function in society" (*McCarthy v Volkswagen of Amer., supra,* p 548).

Neither the Legislature nor the courts favor an expansive interpretation of the term "insanity" as contained in the CPLR 208 tolling provision. However, in the instant case we are not concerned with the temporary effects of medication administered in the treatment of physical injuries (*Eisenbach v Metropolitan Transp. Auth., supra*) nor a "posttraumatic neurosis" (*McCarthy v Volkswagen of Amer., supra*). Rather, we have a bona fide psychiatric disorder resulting from a tragic vehicular accident, plaintiff's physical injuries and the loss of her 10-day-old daughter. It is not necessary that insanity have been adjudicated at the time the cause of action accrued (*Hammer v Rosen,* 7 NY2d 376) for an individual to benefit from the tolling provisions of CPLR 208.

Since the record dictates that plaintiff should have been given the benefit of the CPLR 208 tolling provisions, we will now consider whether, under the circumstances, plaintiff is entitled to an extension of time in which to file a notice of claim under section 50-e of the General Municipal Law. The statute (§ 50-e, subd 5) enumerates various factors for the court to consider in exercising its broad discretion to grant leave to file a notice of claim. These factors are directive rather than exclusive (*Passalacqua v County of Onondaga,* 94 AD2d 949). In determining whether to grant the extension, the court shall consider, in particular, whether the public corporation or its attorney or its insurance carrier acquired actual knowledge of the essential facts constituting the claim within the time specified in subdivision 1 or within a reasonable time thereafter (*Matter of Ziecker v Town of Orchard Park,* 70 AD2d 422, 426, affd 51 NY2d 957). The court shall also consider all other relevant facts and circumstances including the mental or physical incapacity of the claimant. The Town police were notified of the accident but did not respond when advised that the State Police were at the scene and would investigate. The County and Sheriff acquired knowledge within a

week thereof and claim no prejudice. All municipal defendants have had the benefit of the State Police investigation and, in fact, have been in a better position to acquire timely knowledge of the events than plaintiff. Nothing in the statute makes the presence or absence of any one factor determinative (*Bay Terrace Coop. v New York State Employees' Retirement System Policemen's & Firemen's Retirement System,* 55 NY2d 979). Under all of the circumstances herein, and in view of plaintiff's disability, plaintiff should be granted leave to file a late notice of claim under the statute.

■ Special Term properly dismissed both the causes of action for wrongful death and for conscious pain and suffering on behalf of the infant-decedent Heather Barnes. Plaintiff does not contest that portion of the Special Term order as denied her permission to file a late notice of claim in the wrongful death action acknowledging that an action for wrongful death must be commenced within two years after the decedent's death (EPTL 5-4.1; General Municipal Law, § 50-i, subd 1). However, plaintiff maintains that the cause of action for conscious pain and suffering should have the benefit of the over-all three-year Statute of Limitations. As previously indicated, actions against municipal defendants are governed by the 1 year and 90-day Statute of Limitations of section 50-i of the General Municipal Law (*Pierson v City of New York, supra,* p 954). CPLR 210 (subd [a]) provides that: "[w]here a person entitled to commence an action dies before the expiration of the time within which the action must be commenced and the cause of action survives, an action may be commenced by his representative within one year after his death." This provision can never operate to shorten the period of limitations; therefore, it is of potential application only in situations where the claimant dies with less than one year remaining on the relevant period of limitations (*Matter of Gelpi v New York City Health & Hosps. Corp.,* 90 AD2d 503, 504). Here, at the time of the infant-decedent's death more than one year remained on the Statute of Limitations. Therefore, CPLR 210 (subd [a]) has no application as the Statute of Limitations had not been tolled. Furthermore, the toll of infancy would not benefit plaintiff since the infancy dis-

ability was removed by Heather's death on the date of the accident (*Gibbons v City of Troy,* 91 AD2d 707, 708).

Accordingly, the order entered December 1, 1982 should be reversed and plaintiff's motion to file a late notice of claim in her own behalf should be granted and the order entered November 27, 1981 should be affirmed.

DENMAN, BOOMER, GREEN and SCHNEPP, JJ., concur.

Appeal No. 1 — Order [entered Dec. 1, 1982] unanimously reversed, with costs, and plaintiff's motion granted.

Appeal No. 2 — Order [entered Nov. 27, 1981] unanimously affirmed, without costs.