OPINION OF THE COURT
Alan D. Oshrin, J.
By summons dated August 22, 1991 and complaint dated August 16, 1991 plaintiff has commenced this action seeking recovery for damages resulting from alleged sexual abuse, which she contends occurred from 1967 when she was 4 years of age until 1987 when she was 24 years of age. The complaint contains seven separate causes of action and alleges that plaintiff sustained psychological injury which renders her incapable of bringing this action until early 1991, when therapy enabled her to remember the nature of the alleged abuse.
Two applications are now before the court. Defendant has moved pursuant to CPLR 3211 (a) (5) seeking dismissal of the complaint upon the grounds that each cause of action is barred by the Statute of Limitations. Plaintiff has cross-moved pursuant to CPLR 3025 (b) to amend her complaint by adding allegations relating to corroboration of her claims and to clarify and supplement her claims regarding injuries.
Motions to amend pleadings are to be freely granted upon such terms as may be just with the decision to allow or disallow the amendment committed to the court’s discretion (Rothfarb v Brookdale Hosp., 139 AD2d 720 [1988]). It would, however, be improvident for a court to grant such leave if prejudice to the nonmoving party would result (Smith v Bessen, 161 AD2d 847 [1990]) or if the insufficiency or lack of merit of the proposed amendment is clear and free from doubt (Courageous Syndicate v People-to-People Sports Comm., 141 AD2d 599 [1988]). There being no claim of prejudice by defendant and inasmuch as the sufficiency and merits of the proposed amendment cannot be determined until the hearing and determination of the hearing directed herein, plaintiff’s motion to amend her complaint adding corroboration of her claims and clarification and supplementation of her injuries is granted. Additionally, defendant’s application to dismiss shall be treated as having been made with respect to the amended *48 pleading, which is similar in nature, and based upon the same facts as the initial pleading.
When a party moves pursuant to CPLR 3211 (a) (5) for a judgment dismissing a claim on the ground that it is barred by the Statute of Limitations it is that party’s burden initially to establish the affirmative defense by prima facie proof that the Statute of Limitations had elapsed — which burden does not include an obligation on the part of the movant to negate any and all exceptions that might apply to the statutory period (Hoosac Val. Farmers Exch. v AG Assets, 168 AD2d 822 [1990]). By demonstrating that the first six causes of action sound in intentional tort and must be commenced within one year (CPLR 215 [3]); that the seventh cause of action sounds in negligence and must be commenced within three years (CPLR 214 [5]); that plaintiff reached majority in 1981, and that the applicable limitations periods have passed, and there being no "discovery of the injury rule” in sex abuse cases in New York (Bassile v Covenant House, 152 Misc 2d 88 [1991]), defendant has met his burden.
Defendant having established that the Statute of Limitations period has elapsed the burden shifted to plaintiff to aver evidentiary facts establishing that the limitation period was tolled or that some exception to the statutory period exists (Waters of Saratoga Springs v State of New York, 116 AD2d 875 [1986], affd 68 NY2d 777 [1986]). Plaintiff argues that the Statute of Limitations has been tolled by virtue of her insanity disability (CPLR 208)[1] and also that defendant is barred by the doctrine of equitable estoppel from asserting the Statute of Limitations as an affirmative defense (General Obligations Law § 17-103 (4) (b).[2]
*49 Plaintiff makes the following claims:
(1) Defendant was her parents’ next door neighbor throughout her childhood, as well as the father of her best friend, and sexually abused her, without her consent from 1967 to 1987.
(2) The sexual abuse occurred from the time she was 4 until she was 24 years of age.
(3) As a result of the psychological injuries she suffered, she had no recollection of events or understanding of the impact of such incidents of sexual abuse on her life until approximately January of 1991, when such recollection and realization were stimulated during her ongoing psychological therapy sessions.
(4) During her youth she came to experience many debilitating behaviors such as eating binges; refusing to eat; outbursts of rage; thoughts of suicide; substance abuse; and alcohol abuse.
(5) There were long periods during which she refused to wear glasses notwithstanding her poor vision, so that she would not be able to see herself or what was going on around her.
(6) She experienced shame and self-loathing; found it difficult to make friendships; found herself unable to trust others; feared physical contact; found it terrifying to be with other people, and feared intimacy and sexual contact.
(7) During this period she frequently felt "spaced-out” where she could not recall things she had said or done and experienced nightmares and flashbacks.
(8) She was unable to manage her own affairs; unable to maintain employment long enough to support herself; relied upon her parents to support her, and for substantial periods of time continued to live with her parents.
(9) Defendant would tell her that he was doing these "things” for her benefit and that she should not tell anyone else because it was their secret, and defendant’s behavior threatened and frightened her causing her not to reveal the acts in question.
In support of her position that she experienced an over-all inability to function in society and was unable to protect her legal rights and pursue her legal claims, plaintiff submitted the affidavit of one Stuart Grassian, M.D.[3] Dr. Grassian is a *50 psychiatrist who states that he has been qualified as an expert witness in at least 20 trials, and requested that the court treat his affidavit as expert testimony. Upon his examination of the plaintiff and the completion of a psychiatric evaluation of her, Dr. Grassian diagnosed plaintiff’s current condition as post-traumatic stress disorder accompanied by, but not limited to, severe depression, eating disorder and sexual dysfunction. Dr. Grassian concluded that plaintiff’s condition is the result of repeated sexual abuse by the defendant; that the psychological effects of the abuse were especially devastating because defendant and his wife stood in the role of parents to plaintiff; that plaintiff was for many years unable to recognize the relationship because of the devastating emotional distress and abuse she had suffered; that plaintiff turned her hatred and loathing against herself; came to see herself as ugly and repulsive; grew to hate herself; had only vague nightmarish feelings of an unintelligible nature with respect to her childhood, leaving her with no meaningful or coherent memories of being abused; carried into her adulthood a deep sense of shame, a debilitating fear of others and a particular fear of intimacy. Dr. Grassian states that as a consequence of her mental disorder and her resulting fears of other people, plaintiff has never been able to function on her own, and that plaintiff was functionally disabled despite being in psychotherapy during most of her adult years. Dr. Grassian concludes that plaintiff did not have an over-all ability to function independently in society and had no lucid intervals of significant duration. Finally, Dr. Grassian states that defendant, a trusted adult repeatedly telling plaintiff, a child, that "this is our secret”, had a coercive effect upon her with an implicit threat that something dangerous and frightening would occur if their secret was revealed. Dr. Grassian concludes that duress was an integral part of the sexual abuse, and that this duress prevented plaintiff from speaking out.
The initial question for resolution is whether these claimed effects of the alleged sexual abuse are of such a nature as to support a finding that plaintiff is insane within the meaning of CPLR 208 in order for plaintiff to fall within one of the exceptions to strict application of the Statute of Limitations.
"A person is 'insane’ pursuant to CPLR 208[4] for the purposes of tolling the Statute of Limitations if he is unable to manage his business affairs and estate and to comprehend and *51 protect his own legal rights and liabilities because of an overall inability to function in society” (Yannon v RCA Corp., 131 AD2d 843, 845 [1987], citing McCarthy v Volkswagen of Am., 55 NY2d 543 [1982]). The person claiming the benefit of the toll must establish that the mental affliction either existed at the time of the accrual of the cause of action or that it was caused by the event upon which the lawsuit is predicated (see, Dumas v Agency for Child Dev. — New York City Head Start, 569 F Supp 831 [1983]). Importantly, although the determination of insanity does not rest solely upon whether a person is an adjudicated incompetent (see, Hammer v Rosen, 7 NY2d 376 [1960]) the provisions of CPLR 208 tolling the Statute of Limitations period for insanity is a concept equated with unsoundness of mind (Barnes v County of Onondaga, 103 AD2d 624, 628-629 [1984], affd 65 NY2d 664 [1985], citing Eisenbach v Metropolitan Transp. Auth., 62 NY2d 973 [1984]).
The condition of an individual’s mental capabilities is largely a factual question (McCarthy v Volkswagen of Am., 55 NY2d 543, supra). The determination of such mental capabilities and the applicability of the toll for insanity requires an evaluation of all relevant facts and circumstances keeping in mind the manifest purpose of the tolling provision — to relieve from the strict time restrictions any person who actually lacks the ability and capacity, due to mental affliction, to pursue his lawful rights (see, Graboi v Kibel, 432 F Supp 572, 579 [1977]; discussing Matter of Hurd v County of Allegany, 39 AD2d 499 [1972]). The determination of disability should be a pragmatic one, not necessarily based upon medical or psychological classifications alone (Graboi v Kibel, 432 F Supp 572, supra).
Plaintiff and plaintiff’s expert classify plaintiff’s condition as posttraumatic stress disorder accompanied by severe depression, eating disorder, sexual dysfunction and so forth. The court will address the seminal cases relied upon by the parties addressing the classifications of posttraumatic neurosis, post-traumatic depression, posttraumatic stress disorder and psychological trauma and in the context of the CPLR 208 toll for insanity, in order to ascertain whether plaintiff has alleged injuries of such a nature to warrant the tolling of the statute.
In McCarthy v Volkswagen of Am. (78 AD2d 849 [1980], affd 55 NY2d 543, supra) plaintiff claimed that his automobile accident caused psychological scarring that had resulted in a *52 mental disorder which had prevented him from comprehending his legal rights. Upon a hearing in which plaintiffs psychiatric expert testified that plaintiff suffered from "post-traumatic neurosis”, Special Term found that the plaintiff had been insane within the meaning of CPLR 208 and that the Statute of Limitations was tolled. Upon the record, the Appellate Division, Second Department, reversed, finding that plaintiff was able to manage his business affairs and estate and to comprehend his own legal rights and liabilities. The ruling of the Appellate Division was ultimately affirmed by the Court of Appeals. At each appellate level the court’s ruling was based upon plaintiffs mental capabilities as revealed and explored at the hearing conducted at Special Term.
In Barnes v County of Onondaga (103 AD2d 624 [1984], affd 65 NY2d 664 [1985]) another action involving a motor vehicle accident, Special Term found upon a fact-finding hearing, at which plaintiffs psychiatric expert testified that plaintiff was suffering from "posttraumatic depression”, that plaintiff failed to demonstrate that she was insane within the meaning of CPLR 208. The Appellate Division, Fourth Department, reversed Special Term’s ruling finding upon the hearing testimony that plaintiff suffered from " 'posttraumatic depression’ ” and a " 'very serious depressive reaction’ ” and that she was suffering from a bona fide " 'psychiatric disorder’ ” that was " 'more serious than a neurosis’ ” (supra, at 628). The Appellate Division concluded that it was evident from the hearing record that the plaintiff was " 'unable to protect [her] legal rights because of an over-all inability to function in society’ ” (supra, at 629). Upon a review of the hearing testimony, the Court of Appeals affirmed the Appellate Division’s ruling.
In Smith v Smith (830 F2d 11 [1987]) plaintiff commenced an action against her father alleging that he had sexually abused her until 1965, when she was 12 years old. In discussing the CPLR 208 toll for insanity the court noted that plaintiffs proposed medical and psychological experts were of the opinion that she was suffering from a "post-traumatic stress disorder” which caused her to repress her memories of the incestuous occurrences of her childhood and disabled her from instituting litigation which might stimulate a traumatic recall of the childhood events. The court then observed citing *53 McCarthy (supra) that CPLR 208 does not apply to a person " 'claiming a mere posttraumatic neurosis’ ” (supra, at 12). Importantly, the Smith court did not observe the distinction between "posttraumatic neurosis” and "posttraumatic depression disorder” drawn by the New York Court of Appeals in Barnes (supra) and did not discuss the factual basis of plaintiffs mental capability. Moreover, the trial court conducted no fact-finding hearing. Finally, the court noted that even if the insanity provisions of CPLR 208 were applicable it would not have extended plaintiffs right to sue until the year the action was commenced.
In Hoffman v Hoffman (162 AD2d 249 [1990]) plaintiff commenced an action alleging various acts of rape and incest committed during her infancy and shortly thereafter. Plaintiff had reached her majority in 1961 and was approximately 40 years of age when she commenced her action. The Appellate Division, First Department, in a memorandum decision and setting forth no factual basis for the plaintiff’s mental capability, observes parenthetically that plaintiffs allegations of "posttraumatic neurosis” are insufficient to invoke any toll under the insanity provision (supra, at 250, citing McCarthy v Volkswagen of Am., supra). Importantly, without a development of the factual basis of the plaintiff’s mental capability and a fact-finding hearing and an understanding of the distinction between "posttraumatic neurosis” and "posttraumatic depression disorder” or "posttraumatic stress disorder” the classification utilized by the Hoffman court offers no enlightenment as to the extent of plaintiff’s mental capabilities.
Finally, in Burpee v Burpee (152 Misc 2d 466 [1991]) plaintiff commenced an action alleging that her natural father subjected her to sexual abuse during the years 1972 to 1975, when she was between the ages of 8 and 11. The plaintiff did not raise the CPLR 208 toll for insanity but confined her opposition to urging the court to utilize General Obligations Law § 17-103 (4) (b) and find that by reason of defendant’s conduct it would be inequitable to permit him to interpose the defense of the Statute of Limitations. In discussing psychological trauma and the repression of memory in the context of the court’s equitable powers, the Burpee court observed in dicta that the Court of Appeals in McCarthy (supra) held that CPLR 208 did not extend to individual’s suffering from "posttraumatic neurosis” (supra, at 468). Inasmuch as the court in Burpee was not presented with a need to determine plaintiff’s mental capabilities for the purposes of the toll for insanity the court did not discuss plaintiffs mental capabilities or conduct a fact-finding hearing.
*54 Posttraumatic stress disorder is a clinically diagnosed mental disorder in which the victim avoids situations that stimulate recall of traumatic events or experiences. The victim attempts to repress psychologically unacceptable experiences until a later time in life when it might be possible to cope with them.[5] While mere repression may be insufficient to toll the Statute of Limitations, where the repression is but one of a bundle of claimed injuries the totality of which, if established, would indicate an over-all inability to function in society then the Statute of Limitations will be tolled.
Were plaintiff to have alleged merely that she has been unable to remember the alleged misconduct because of the very nature of the misconduct, and that were the only injury to be alleged, the complaint could be dismissed. However, beginning with McCarthy v Volkswagen of Am. (supra) and continuing through Hoffman v Hoffman (supra), our appellate courts have enunciated a rule which establishes that the tolling of the statute is based upon a determination of whether the party seeking to toll the statute was able to protect his or her legal rights, or whether because of an overall inability to function, such ability to protect one’s legal rights had been lost, emphasizing the factual setting in each case and requiring a determination of the plaintiff’s mental capability and the impact of the alleged event upon the particular plaintiff. Where serious harm is alleged to have occurred as a result of sexual abuse, and where allegations of posttraumatic neurosis or posttraumatic stress disorder are made coupled with allegations relating to other psychological injuries — which when considered together are alleged to result in such an over-all inability to function in society — a hearing must be held to ascertain the truthfulness of the allegations and, thus, whether the Statute of Limitations should be tolled.
Recognizing that the determination of mental capabilities and insanity for tolling purposes is largely a factual question (McCarthy v Volkswagen of Am., 55 NY2d 543, supra) and further recognizing that the actual mental capabilities and daily living skills of the plaintiff are more important than the medical or psychological classification placed upon such capabilities and skills (see, Graboi v Kibel, 432 F Supp 572, supra) the court concludes that the question of plaintiff’s *55 insanity cannot be decided as a matter of law from the pleadings and affidavits and a factual hearing on the issue of insanity must be held (Libertelli v Hoffman-La Roche, Inc., 565 F Supp 234 [1983]). The courts have consistently held that unless proof of insanity is conclusive, the court should conduct a fact-finding hearing to determine the extent of plaintiff’s disability (see, e.g., Scott v K-Mart Store No. 3366, 144 AD2d 958 [1988]; Kelly v Solvay Union Free School Dist., 116 AD2d 1006 [1986]; see also, Cairl v County of Westchester, 150 AD2d 749 [1989]; Yannon v RCA Corp., 131 AD2d 843, supra). Moreover, in conducting such hearing the court must evaluate all relevant facts and circumstances keeping in mind the manifest purpose of the tolling provision — to relieve from strict time restrictions any person who actually lacks the ability and capacity, due to mental affliction, to pursue his lawful rights (see, Graboi v Kibel, 432 F Supp 572, supra; Hurd v County of Allegany, 39 AD2d 499, supra).
The parties shall produce at such hearing expert psychiatric testimony and documentary evidence, nonexpert testimony of the plaintiff and her family, and any other relevant testimony and evidence to allow this court to determine the extent of plaintiff’s ability to manage her general business and social affairs and estate and the extent to which plaintiff is or was able to comprehend and protect her legal rights (see, McCarthy v Volkswagen of Am., 55 NY2d 543, supra; Barnes v County of Onondaga, 103 AD2d 624, supra) as well as whether plaintiff’s disability was continuous in nature, without any periods of lucidity of significant duration (see, Von Bulow v Von Bulow, 634 F Supp 1284 [1986]; Dumas v Agency for Child Dev.-New York City Head Start, 569 F Supp 831, supra). The parties will have the opportunity to conduct discovery on the issue of plaintiff’s insanity (see, Libertelli v Hoffman-La Roche, Inc., 565 F Supp 234, supra) as hereinafter provided by the court.
Additionally, in order to edify the court prior to the hearing and to facilitate expedient resolution after the hearing plaintiff shall within 30 days of the date of this opinion furnish this court with a report or affidavit of plaintiff’s treating psychologist, therapist or psychiatrist, containing a specific factual basis for any medical conclusions offered, for in camera review.
Plaintiff also argues that the defendant is barred by the doctrine of equitable estoppel from asserting the Statute of Limitations as an affirmative defense (see, General Obligations Law § 17-103 [4] [b]). To avail oneself of General Obligations Law § 17-103 (4) (b) an aggrieved plaintiff must show that a *56 defendant wrongfully induced plaintiff to postpone bringing a suit or fraudulently concealed a cause of action unknown to the plaintiff (Adelman v Friedman, 80 Misc 2d 946, 949 [1975], affd 83 Misc 2d 802 [1975], citing General Stencils v Chiappa, 18 NY2d 125 [1966]). Specifically, plaintiff argues that by virtue of the statements made by defendant, a trusted neighbor to her from childhood and throughout the 20-year period of the alleged sexual abuse, that he was doing this for her own good or that it was their secret that she was under duress and felt threatened and coerced and was disabled from and unable to commence the action in a timely fashion.
A defendant may be estopped to plead the Statute of Limitations where plaintiff was induced by fraud, misrepresentation or deception to refrain from commencing a timely action (see, Simcuski v Saeli, 44 NY2d 442 [1978]; Park Assocs. v Crescent Park Assocs., 159 AD2d 460 [1990]). A plaintiff must demonstrate both that the defendant’s conduct caused him to forego commencing a timely action and that he was justified in relying upon such conduct or representations (see, Rains v Metropolitan Transp. Auth., 120 AD2d 509 [1986]). It is the conduct by a defendant after the initial wrongdoing which prevents the plaintiff from discovering or suing upon the initial wrong which triggers application of the doctrine of equitable estoppel (see, Smith v Smith, 830 F2d 11, supra). Furthermore, when duress is part of the cause of action alleged, the limitations period is tolled until the termination of the duress (see, Baratta v Kozlowski, 94 AD2d 454 [1983]).
Inasmuch as plaintiff’s allegations regarding defendant’s conduct and statements and the impact on her and her reliance thereon, with respect to defendant’s being equitably estopped from raising the Statute of Limitations as an affirmative defense are so entwined with the facts to be uncovered and explored at the hearing to determine plaintiff’s mental capability and the toll for insanity directed herein, a fact-finding hearing shall be held with respect to the issues of misrepresentation, deception, coercion and duress as well (cf., Smith v Smith, 830 F2d 11, supra [where plaintiff conceded that she knew she was sexually abused and the abuse had caused her harm and there was no claim of a toll for insanity]; cf., Burpee v Burpee, 152 Misc 2d 466, supra [where there was a claim of psychological trauma but no claim of a toll for insanity]).
The plaintiff shall produce at such hearing evidence of the statements and conduct claimed to be coercive, threatening, *57 deceptive or in the nature of duress; when such statements were made and conduct occurred and whether any such statements were made or conduct occurred after plaintiff attained the age of majority (see, Smith v Smith, 830 F2d 11, supra) and when such statements or conduct ceased (see, Baratta v Kozlowski, 94 AD2d 454, supra). The parties will have the opportunity to conduct discovery on the issues pertaining to this hearing as hereinafter provided by the court.
A hearing shall be held before this court on June 15, 1992 at 9:30 a.m. at courtroom E-203, Riverhead, New York. The parties shall notify the court within 10 days of the date of this opinion as to what discovery, if any, is desired and the time frame therefor. In the event the parties are unable to agree, they shall appear before the court for a preliminary conference on March 30, 1992, at which time the court will issue a discovery order limiting discovery to those issues to be addressed and determined upon the hearing directed herein.
In concluding the court observes that there is today an increasing awareness of the existence of childhood sexual abuse and an increasing understanding of the psychological damage, and at times, long delay in discovery.[6] Unless a plaintiff is aware of and able to prosecute her cause of action by the time the toll for infancy disability ceases (CPLR 208) or has an over-all inability to function in society within the toll for insanity (CPLR 208) but is nonetheless able to prosecute her claim within 10 years of attaining the age of majority— the toll for insanity being limited to a 10-year period, the tolling provisions as presently existing in New York are of little practical use to the victim of childhood sexual abuse litigating as an adult.
The court acknowledges New York’s long tradition of hostility towards holding the period of limitations in abeyance pending actual discovery of the injury (see, Bassile v Covenant House, 152 Misc 2d 88, 91, supra, citing Goldsmith v Howmedica, Inc., 67 NY2d 120 [1986]; Fleishman v Lilly & Co., 62 NY2d 888 [1984], cert denied 469 US 1192 [1985]) and the Judiciary’s deference to the Legislature in this regard (see, e.g., Matter of Steinhardt v Johns-Manville Corp., 54 NY2d *58 1008 [1981]; Thornton v Roosevelt Hosp., 47 NY2d 780 [1979]). The court also acknowledges that the Legislature has, in fact, acted when a compelling need is seen to have the Statute of Limitations run from a time other than the time of the wrongful act.
First, CPLR 214-a provides that when a medical, dental or podiatric malpractice action "is based upon the discovery of a foreign object in the body of the patient, the action may be commenced within one year of the date of such discovery or of the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier.”
Second, CPLR 214-b provides that: "an action to recover damages for personal injury caused by contact with or exposure to phenoxy herbicides while serving as a member of the armed forces of the United States in Indo-china * * * may be commenced within two years from the date of discovery of such injury, or within two years of the date when through the exercise of reasonable diligence the cause of such injury should have been discovered, whichever is later.”
Third, CPLR 214-c (2) provides that: "the three year period within which an action to recover damages for personal injury or injury to property caused by the latent effects of exposure to any substance or combination of substances, in any form, upon or within the body or upon or within property must be commenced shall be computed from the date of discovery by the plaintiff or from the date when through the exercise of reasonable diligence, such injury should have been discovered by the plaintiff, whichever is earlier.”
In view of the fact that the Legislature of the State of New York has found a compelling need to have the Statute of Limitations run from a time other than the time of the wrongful act, as noted above, perhaps it is appropriate at this time for the Legislature to consider whether such a compelling need exists with respect to the victim of childhood sexual abuse, where as in the other atypical tort situations noted above, the plaintiff is "blamelessly ignorant” of the injury (see, Urie v Thompson, 337 US 163, 170 [1949]; Note, Civil Claims of Adults Molested as Children: Maturation of Harm and the Statute of Limitations Hurdle, 15 Fordham Urb LJ 709, 719-721). Perhaps the time is ripe for legislative adoption of a new discovery of the injury rule with respect to injury caused in sexual abuse cases in the State of New York. (See, Bassile v Covenant House, 152 Misc 2d 88, supra.)
*59 Finally, given the infamous stigma that attaches to the accused abuser (see, Bassile v Covenant House, 152 Misc 2d 88, supra) and the extremely sensitive nature of an action such as this, the court is amending the caption, sua sponte, for the purpose of protecting the name of the defendant to read Anonymous v Anonymous (see, Matter of Anonymous, 75 Misc 2d 133 [1973]; Judiciary Law § 2-b [3]). For purposes of identification all papers captioned in the name of Anonymous v Anonymous in this case shall carry the index No. 91-23118 (see, Anonymous v Anonymous, 70 AD2d 538 [1979]).

. CPLR 208 provides: "If a person entitled to commence an action is under a disability because of infancy or insanity at the time the cause of action accrues, and the time otherwise limited for commencing the action is three years or more and expires no later than three years after the disability ceases, or the person under the disability dies, the time within which the action must be commenced shall be extended to three years after the disability ceases or the person under the disability dies, whichever event first occurs; if the time otherwise limited is less than three years, the time shall be extended by the period of disability. The time within which the action must be commenced shall not be extended by this provision beyond ten years after the cause of action accrues, except, in any action other than for medical, dental or podiatric malpractice, where the person was under a disability due to infancy.”

. General Obligations Law § 17-103 (4) (b) provides that this section "does not affect the power of the court to find that by reason of conduct of the party to be charged it is inequitable to permit him to interpose the defense of the statute of limitations”.

. The court observes that Dr. Grassian’s affidavit fails to set forth when the examination took place; the nature of the psychiatric evaluation conducted; the medical records, if any, provided to him by plaintiff’s psychological therapist, and the factual basis for his conclusions and findings.

. The statute itself provides no definition of the term insanity.

. Note, Civil Claims Of Adults Molested as Children: Maturation of Harm and the Statute of Limitations Hurdle, 15 Fordham Urb LJ 709, 717, discussing Donaldson & Gardner, Diagnosis & Treatment of Traumatic Stress Among Women After Childhood Incest, in Trauma and Its Wake: The Study and Treatment of Post-Traumatic Stress Disorder 356 (Figley ed 1985).

. See, e.g., Donaldson & Gardner, Diagnosis & Treatment of Traumatic Stress Among Women After Childhood Incest, in Trauma And Its Wake: The Study and Treatment of Post-Traumatic Stress Disorder 356 (Figley ed 1985); Finkelhor, A Sourcebook on Childhood Sex Abuse (1986); The Sexual Abuse of Children (Cohen & McCabe ed 1987); Scrignar, Post-Traumatic Stress Disorder; Diagnosis, Treatment and Legal Issues (1984).