**Carol OVERALL, Plaintiff–Appellant,**

**v.**

**ESTATE OF L.H.P. KLOTZ,**
**Defendant–Appellee.**

**No. 689, Docket 94–7407.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 17, 1995.

Decided March 29, 1995.

---

Phyllis Gelman, Gelman & Feinberg (Lindsay Feinberg, of counsel), New York City, for plaintiff-appellant.

I. Michael Bayda, Jacobs Persinger & Parker (Albert M. Rizzo, of counsel), New York City, for defendant-appellee.

Before: NEWMAN, Chief Judge, MINER and CABRANES, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge:

Carol Overall claims that her father abused her sexually, emotionally and physically from 1947 until 1949, and that the abuse was so severe that she repressed all memories of it for more than forty years. We are not called upon to decide whether Overall is telling the truth. Instead, we must decide whether in 1992, more than forty-three years after she claims her father struck the last blow and uttered the last threat, it was too late for her to ask the courts to force her father, or more precisely his estate, to pay for this alleged abuse.

In many ways, victims of child abuse are entitled to special protections in our courts. Because we cannot expect a child to file a lawsuit to protect his legal rights—certainly not against an abuser—New York common law has long provided that a statute of limitations will not start running until the child becomes an adult. The courts have carved out another general exception to the statute of limitations, the "duress tolling" exception. One important application of this doctrine is to children who continue to suffer at the hands of their abusers even after they reach the legal age of majority. As long as these victims remain subject to "duress" (that is, the abuse), the courts treat them as suffering from a "continuous wrong." For these victims, the statute of limitations clock starts ticking only when the abuse finally ends.

Overall asks this court to extend the period within which she can file suit by forty-one years, relying primarily on the "duress tolling" theory. She argues that because she repressed all memories of childhood abuse until 1991, she has been subjected to a "continuous wrong" for all these years—despite the fact that her father did not threaten or abuse her after 1949.

This is not the first time New York courts have faced lawsuits brought by persons who claim to have recently unearthed long-hidden memories of child abuse. In other repressed-memory child abuse cases, New York has consistently refused to toll the statute of limitations on the theory that the abuse victim's memory loss constituted insanity,[1] that the abuser was somehow profiting from his own wrongdoing (equitable estoppel),[2] or that the limitations period should begin after the abuse was "discovered" through psychotherapy.[3] We conclude that, in the circumstances presented here, the "duress tolling" doctrine is equally unavailing.

Because her father stopped abusing her in 1949, Overall was subjected to a "continuous wrong" only until 1949, regardless of whether she suffered amnesia as a result of that abuse. Accordingly, she is not entitled to the "duress tolling" exception to the statute of limitations and must abide by the same time limits as all other child abuse victims. New York law clearly provides that victims in Overall's circumstances have two years after they turn twenty-one to sue their abusers. Overall reached her twenty-first birthday on November 8, 1963; her action was brought in 1992. Since she did not file suit within the required time, the United States District Court for the Southern District of New York (John E. Sprizzo, *Judge*), granted summary judgment in favor of the defendant. We affirm.

## I. BACKGROUND

■ Because this case arises on appeal from a grant of summary judgment for defendant, we must view the evidence in the light most favorable to plaintiff, the nonmoving party. With that in mind, we set forth the facts as follows.

---

1. *Smith v. Smith*, 830 F.2d 11 (2d Cir.1987); *Hoffman v. Hoffman*, 162 A.D.2d 249, 556 N.Y.S.2d 608 (1st Dep't 1990); *Burpee v. Burpee*, 152 Misc.2d 466, 578 N.Y.S.2d 359 (Sup.Ct. Nassau County 1991).

2. *Schmidt v. Bishop*, 779 F.Supp. 321 (S.D.N.Y. 1991); *Zoe G. v. Frederick F.G.*, 208 A.D.2d 675, 617 N.Y.S.2d 370 (2d Dep't 1994); *Steo v. Cucuzza*, N.Y.L.J., July 16, 1993, at 27 (Sup.Ct. Rich-

mond County 1993); *Anonymous v. Anonymous*, 154 Misc.2d 46, 584 N.Y.S.2d 713 (Sup.Ct. Suffolk County 1992); *Burpee*, 578 N.Y.S.2d at 361–62.

3. *Bassile v. Covenant House*, 152 Misc.2d 88, 575 N.Y.S.2d 233, 236 (Sup.Ct.N.Y.County 1991), *aff'd*, 191 A.D.2d 188, 594 N.Y.S.2d 192 (1st Dep't 1993).

Carol Overall was born in 1942. When her parents were divorced in 1947, custody of Overall was awarded to her father, Leopold Klotz, who lived in Texas. Overall's mother, who lived in New York City, had visitation rights during Easter vacations and half of summer vacations.

Overall alleges that while she lived with her father in Texas from 1947 until 1949, he repeatedly abused her sexually, physically and emotionally. He warned her several times that if she ever told anyone of his abuse, he would abandon her, maim her or kill her. Klotz took away from Overall all of the belongings she had brought from her mother's house and burned her last toy from home in her presence. As a result of the abuse suffered at the hands of her father, Overall says that she became unable to feel her body or to cry.

In 1948, Klotz sent Overall to live at a convent school in Missouri. He told the nuns that Overall's mother was dead. Not realizing that Klotz had lied to them, the nuns relayed this false information to Overall, who became very upset and required medical attention. Klotz never visited Overall during her stay at the Missouri school, nor did he permit her to return home for Christmas and other holidays. In fact, she was the only child who did not return home for Christmas. Klotz refused to let Overall's mother visit or even contact Overall, and he repeatedly denied Overall's mother information about the child. Her mother was forced to resort to a court action in order to see Overall during Easter vacation in 1949.

When the school year closed, Overall returned to her father's home in Texas, where he resumed his abuse. When Overall was finally permitted to visit her mother in New York during summer vacation, she arrived in a sickly condition and required medical treatment.

After Overall returned to her father, he again sent her to a boarding school, this time in Mississippi. Klotz never visited Overall during the school year, nor did he permit her to return home during vacations. He refused her mother's request that Overall visit her over Christmas break, so the child again spent Christmas alone at the boarding school.

In the spring of 1950, Overall went to visit her mother in New York City. Because of Overall's poor physical condition, her mother would not return her to Klotz. Instead, she sought and obtained custody of Overall through the New York courts. Overall testified that at some time after she left the boarding schools, she repressed all memories of her father's abuse. She never told anyone about the abuse until she entered therapy more than forty years later.

Overall lived with her mother thereafter. Although her father had visitation rights, he never visited her at all, even after he moved to New York City. When Overall was a teenager, her mother sent her several times to meet with her father to ask him for money for school outings and the like. Overall felt "nauseous and sick and upset and frightened" whenever she had to meet with her father, even though she does not claim that he threatened or abused her at any of these meetings. She claims that he engaged in disturbing activity on only one occasion, when she coincidentally bumped into him at a party. According to Overall, Klotz did not recognize her as his daughter and made sexual advances towards her while they were dancing. She reports that when she informed him that she was his daughter, he was "flabbergasted" because he had not recognized her at all. In 1981, Overall paid an unannounced visit to her father at his upstate New York farm, to ask him for $1,600 to go to California and start a new life. After a long talk, her father gave her $2,000.

Plaintiff claims that as a result of her father's abuse between 1947 and 1949—when she was four to seven years old and lived with him in Texas—she has suffered tremendous psychological damage. She claims to have been plagued by feelings of terror, insecurity, and worthlessness, and by psychosomatic symptoms; she has never married or had children despite her desire to have a family; she has been unable to have a career and during most of her adult life has been unable to earn a living; she has repeatedly entered into abusive relationships with other men; and she has been suicidal. Beginning

in her thirties, she participated in group therapy over a fifteen-year period.

In 1988, plaintiff began one-on-one therapy with Judith Schwartz, a psychologist experienced in treating victims of childhood sexual abuse. As a result of this therapy, plaintiff claims to have had flashbacks, beginning in May, 1990, about her father's abuse. Overall claims that only in June 1991, after a year of further therapy, was she finally able to confront her father regarding his abuse. At that "confrontation," she told her then-eighty-two-year-old father that she needed financial help and that she "wanted to talk to him about Texas." (J.A. at 183–84). He replied that he would help her out, but did not wish to discuss the past. Soon afterwards, though, he told her that he would not give her "a single penny" because she had been "badmouthing" him. (J.A. at 188). In October 1991, Overall had her attorney send a letter to Klotz demanding financial remuneration for the abuse she had suffered during her youth, and threatening to bring legal action.

On March 26, 1992, Overall filed the complaint in this action. She brought three claims against her father: (1) assault and battery; (2) false imprisonment; and (3) intentional infliction of emotional distress.[4] Leopold Klotz died on November 20, 1993, and his estate was substituted as the defendant.[5]

In the district court, Overall produced expert testimony from her treating therapist and a psychiatrist that she suffers from post traumatic stress disorder, and that she fits the profile of an adult survivor of childhood incestuous abuse. In an affidavit, the psychiatrist also stated that the repression of Overall's memories was a direct result of the abuse that she experienced at the hand of her father.

The district court granted summary judgment for the defendant, reasoning that New York law required the plaintiff to suffer conscious fear in order to trigger tolling by duress. Since Overall admitted that she had repressed all memories of her childhood abuse, the district court concluded that her action was barred by New York's one-year statute of limitations, found in N.Y.Civ. Prac.L. & R. § 215(3).

Overall appeals from that decision.

## II. Discussion

### A. *Choice of Law*

■ At the threshold, we must determine which statute of limitations governs Overall's action. As Judge Sprizzo cogently reasoned:

Plaintiff alleges that the conduct that forms the basis of her claims of assault and battery and intentional infliction of emotional distress occurred in Texas between 1947 and 1949, ... and that her claim of false imprisonment is based on conduct that occurred in Texas, Missouri and Mississippi between 1947 and 1949.... In order to determine whether to apply the statute of limitations of New York, Texas, Missouri, or Mississippi in this diversity action, this Court must look to New York law. *Sun Oil Co. v. Wortman*, 486 U.S. 717 [108 S.Ct. 2117, 100 L.Ed.2d 743] (1988). The New York borrowing statute, N.Y.Civ.Prac.L. & R. § 202 (McKinney 1990), and its predecessor statute, N.Y.Civ. Prac.A. § 13, which was applicable at the time the alleged events took place, provide that where, as here, a cause of action has accrued outside New York, the applicable statute of limitations is that of New York or of the state where the cause of action accrued, whichever is shorter. Therefore, if Overall's action would be untimely under New York law, ... it must be dismissed regardless of whether it would be barred under the law of Texas, Missouri or Mississippi.

(Memorandum Opinion and Order at 5–6). As we discuss below, Overall's claims are time-barred under New York law and therefore must be dismissed. Accordingly, we need not determine whether her actions would survive in some other jurisdiction.

---

**4.** Although the original complaint included ten causes of action, Overall has withdrawn all but these three claims.

**5.** For convenience, this opinion will refer to Klotz as the defendant.

### B. *The Applicable New York Statute of Limitations*

[redacted] The district court held that Overall's action was governed by the one-year statute of limitations set forth in N.Y.Civ.Prac.L. & R. § 215(3) (McKinney 1990),[6] but that the limitations period had been tolled until her eighteenth birthday under N.Y.Civ.Prac.L. & R. § 208 (McKinney 1990).[7] Accordingly, the court found that absent some further reason to toll the limitations period, Overall's claim would have been time-barred on November 8, 1961—one year after she turned eighteen.

On appeal, Overall contends that the district court should have applied the limitations provisions of the predecessor statute to the New York Civil Practice Law and Rules: the Civil Practice Act. We agree.

When New York's Civil Practice Law and Rules were enacted, section 218 provided that a plaintiff whose action was not time-barred on September 1, 1963, would have the benefit of the limitations period in either the Civil Practice Act or the Civil Practice Law and Rules, whichever was longer. At the time of the alleged abuse, Civ.Prac.Act § 50(1) provided Overall with a two-year period to bring suit.[8] Because Civ.Prac.Act § 60 tolled the limitations period for infancy until the plaintiff reached twenty-one years of age (in this case, November 6, 1963), Overall's action was not time-barred on September 1, 1963, the date the Civil Practice Law and Rules took effect.[9] Accordingly, Overall is entitled to the longer limitations provisions of the Civil Practice Act.

Even so, Overall's claim would still have been time-barred as of November 6, 1965—two years after her twenty-first birthday—unless her limitations period were tolled for duress. We now turn to that contention, which is at the heart of Overall's case.

### C. *Tolling the Limitations Period*

#### 1. *New York Tolling Doctrine*

[redacted] Because the statute of limitations is an affirmative defense, the defendant bears the burden of establishing by prima facie proof that the limitations period has expired since the plaintiff's claims accrued. *Hoosac Valley Farmers Exchange, Inc. v. AG Assets, Inc.*, 168 A.D.2d 822, 563 N.Y.S.2d 954, 955 (3d Dep't 1990). Klotz has met this burden, since all of plaintiff's claims had accrued by September 1949—the date of the last alleged abuse—and more than two years have run since then.

[redacted] The burden then shifts to the plaintiff to establish that the limitations period should be tolled. *Waters of Saratoga Springs, Inc. v. State*, 116 A.D.2d 875, 498 N.Y.S.2d 196, 199 (3d Dep't), *aff'd*, 68 N.Y.2d 777, 506 N.Y.S.2d 673, 498 N.E.2d 146 (1986). Simply by establishing her birth date as November 6, 1942, Overall has met her burden with regard to infancy tolling under N.Y.Civ.Prac. Act § 60. But infancy tolling extends her period only to November 6, 1965. She relies

6. Section 215 provides:

> The following actions shall be commenced within one year:
>
> ....
>
> 3. an action to recover damages for assault, battery, false imprisonment, ... or a violation of the right of privacy under section fifty-one of the civil rights law....

7. Section 208 provides:

> If a person entitled to commence an action is under a disability because of infancy or insanity at the time the cause of action accrues, and the time otherwise limited for commencing the action ... is less than three years, the time [within which the action must be commenced] shall be extended by the period of disability. The time within which the action must be commenced shall not be extended by this provision beyond ten years after the cause of action accrues, except ... where the person was under a disability due to infancy....

8. Section 50 (Gilbert–Bliss Supp.1962) provided:

> The following actions must be commenced within two years after the cause of action has accrued:
>
> 1. An action to recover damages for assault, battery, seduction, criminal conversation, false imprisonment....

9. Section 60 (Gilbert–Bliss Supp.1962) provided:

> If a person entitled to maintain an action other than for the recovery of real property ... is at the time when the cause of action accrues ... [w]ithin the age of twenty-one years ... and if the time otherwise limited in this article for commencing the action ... is less than five years, such time shall be extended by the period of disability....

on duress tolling to extend the limitations period until 1992, but her reliance is misplaced.

■ In order to determine the scope of duress tolling, we bear in mind that New York construes tolling doctrines as narrowly as possible. *McCarthy v. Volkswagen of Am., Inc.,* 55 N.Y.2d 543, 548, 450 N.Y.S.2d 457, 459, 435 N.E.2d 1072 (1980) ("[T]olling provisions should not readily be given an expansive interpretation tending to undermine the basic purposes behind the Statutes of Limitation."). We must also remember that it is only one of several tolling doctrines, each developed in Chancery to remedy a different inequity. We can say with confidence that equity generally favors blameless plaintiffs and punishes blameworthy defendants. But because these laudable goals of fairness undergird all tolling doctrines—particularly equitable estoppel and duress they cannot explain all the differences between these doctrines.[10]

■ In order to invoke equitable estoppel, a plaintiff must show that the defendant "wrongfully induced the plaintiff to refrain from timely commencing an action by deception, concealment, threats or other misconduct." *Zoe G. v. Frederick F.G.,* 208 A.D.2d 675, 617 N.Y.S.2d 370, 371 (2d Dep't 1994); *see also Simcuski v. Saeli,* 44 N.Y.2d 442, 449, 406 N.Y.S.2d 259, 262, 377 N.E.2d 713 (1978) (discussing fraud, misrepresentations, or deception as grounds for estoppel); *Hoffman v. Hoffman,* 162 A.D.2d 249, 556 N.Y.S.2d 608, 609 (1st Dep't 1990) (listing fraud, misrepresentation, threat, or deception). Because a person who seeks equity must do equity, a plaintiff invoking estoppel must show that he brought his action "within a reasonable time after the facts giving rise to the estoppel have ceased to be operational." *Simcuski,* 44 N.Y.2d at 450; *Hoffman,* 556 N.Y.S.2d at 608. Equitable estoppel, therefore, looks at the parties' conduct only to determine their relative blameworthiness in delaying the commencement of suit.

■ Duress tolling, on the other hand, examines the parties' conduct only to determine whether that conduct constitutes a continuation of the underlying tort. New York law requires that a plaintiff be subjected to a "continuous wrong" for duress tolling to be appropriate. *Cullen v. Margiotta,* 811 F.2d 698, 722 (2d Cir.) (tolling limitations period as long as plaintiffs were subjected to ongoing extortion), *cert. denied sub nom. Nassau County Republican Comm. v. Cullen,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987); *Kamonitsky v. Corcoran,* 97 Misc. 384, 388, 161 N.Y.S. 756, 759 (Sup.Ct.App. Term 1st Dep't 1916) (same), *rev'd on other grounds sub nom. Kamenitsky v. Corcoran,* 177 A.D. 605, 164 N.Y.S. 297 (1st Dep't 1917) (finding insufficient facts pleaded to support claim of tolling). In *Kamenitsky,* the Appellate Division for the First Department rejected a claim of duress tolling by a plaintiff who made payments to the defendant for eleven years, purportedly under the duress of a single original threat. The court required the plaintiff to allege some further conduct by the defendant in order to establish a continuous wrong: "Even if the first payment were made under duress, it could not be successfully claimed that, where not another word ever passed between the parties, each monthly payment continuing thereafter for 11 years was made under duress of the original threat." *Kamenitsky,* 164 N.Y.S. at 301.

■ "Duress" involves both threats or force by the defendant, and the submission of the plaintiff's free will to those threats. Both elements of duress must continue in order for a duress-based tort to persist as a "continuous wrong." As shorthand for this rule, courts have explained that duress tolling is available only when duress is an element of the cause of action alleged. *Cullen,* 811 F.2d at 722 (permitting tolling because duress is element of extortion); *Day v. Moscow,* 955 F.2d 807, 813 (2d Cir.) (rejecting tolling because duress is not element of false arrest or unlawful search and seizure), *cert. denied,* —— U.S. ——, 113 S.Ct. 71, 121 L.Ed.2d 37 (1992); *Schmidt v. Bishop,* 779

---

**10.** We address only the tolling doctrines of equitable estoppel and duress because their similarities often lead to confusion.

F.Supp. 321, 330–31 (S.D.N.Y.1991) (rejecting duress tolling because duress is not element of negligence, fraud or malpractice); *Baratta v. Kozlowski,* 94 A.D.2d 454, 464 N.Y.S.2d 803, 806–07 (2d Dep't 1983) (rejecting tolling because duress is not element of embezzlement).

■ Duress tolling is not triggered, however, simply because duress constitutes an element of the underlying tort. In order to constitute a "continuous wrong" that tolls the limitations period, *the tortious conduct itself must continue. See, e.g., Pacchiana v. Pacchiana,* 94 A.D.2d 721, 721, 462 N.Y.S.2d 256, 257 (2d Dep't 1983) (rejecting duress tolling in action to rescind antenuptial agreement, because coercion ceased upon execution of the agreement). Furthermore, the tortious conduct must continue uninterrupted. In the seminal case of *Piper v. Hoard,* 107 N.Y. 67, 71, 13 N.E. 632 (1887), for example, the New York Court of Appeals would not permit tolling for duress where the defendant coerced the plaintiff into signing over a deed, and later forced him into forgoing a lawsuit to rescind the deed. Because the two episodes of coercion were separate, the limitations period as to the first was not tolled by the second. *See also Gallas v. Greek Orthodox Archdiocese,* 154 Misc.2d 494, 502, 587 N.Y.S.2d 82, 88 (Sup.Ct.N.Y.County 1991) (rejecting duress tolling where coercion allegedly ceased in 1983 and resumed in 1985).

■ The rationale behind duress tolling is that certain torts occur over a stretch of time, not just at the single identifiable moment when the cause of action accrues. When a plaintiff is subject to a "continuous wrong," the moment of accrual still determines when judicial relief is first available, but equity begins to run the limitations period from when the tortious conduct ceases. We presume that a plaintiff is unable to file suit so long as—but no longer than—she is subjected to a duress-based tort. We now examine whether Overall has brought forward any evidence that she was continuously subjected to any duress-based torts and thus was entitled to toll the limitations period for duress.

## 2. *Applying New York Tolling Doctrine to Overall's Claims*

■ The district court granted summary judgment for defendant on the grounds, *inter alia,* that no rational trier of fact could conclude that Overall was still under the influence of the duress caused by her father's abuse within a year of when she filed her complaint. On appeal, Overall contends that how long she remained under duress is a question of fact for the jury, not the judge. She argues that she presented enough evidence to create a genuine dispute as to whether her failure to bring suit until 1992 due to memory loss was caused by her father's abuse in the 1940's. Klotz replies that under New York law, Overall cannot qualify for duress tolling unless she can demonstrate some threats or abuse during the limitations period. Klotz is correct.

Whether or not Overall remained under the influence of her father's "duress" for forty years is indeed a factual inquiry, but ultimately an irrelevant one for purposes of deciding the statute of limitations question presented here. The central question is whether her father's tortious conduct spanned from 1949 until at least May 1990 (two years before she filed suit) and thus subjected her to a "continuous wrong."[11] It

11. New York courts confronting similar claims of repressed-memory child abuse have also looked for evidence of continuing tortious conduct. In two reported cases, New York courts dismissed child abuse claims that were otherwise barred by the statute of limitations, where the plaintiff failed to allege any coercive acts by the abuser either after the initial abuse ceased or after the victim reached the age of majority. *Zoe G. v. Frederick F.G.,* 208 A.D.2d 675, 617 N.Y.S.2d 370, 371 (2d Dep't 1994); *Steo v. Cucuzza,* N.Y.L.J., July 16, 1993, at 27 (Sup.Ct.Richmond County 1993). Overall cites two other decisions for the proposition that the question of duress

tolling must always be left to the jury whenever duress constitutes an element of the underlying claim. *Pagan v. Pagan,* N.Y.L.J., Dec. 11, 1992, at 35 (Sup.Ct.Suffolk County 1992); *Anonymous v. Anonymous,* 154 Misc.2d 46, 584 N.Y.S.2d 713 (Sup.Ct.Suffolk County 1992). In both *Pagan* and *Anonymous,* however, the court merely permitted the plaintiffs to conduct discovery about the continuous nature of any coercive statements or conduct by their alleged abusers, in order to provide evidentiary support for their claims of continuous duress. *Pagan,* N.Y.L.J., Dec. 11, 1992, at 35; *Anonymous,* 154 Misc.2d at 57, 584

does not matter for purposes of applying New York's statute of limitations that Overall may still suffer psychological scars from childhood abuse.

The district court assumed for the purposes of deciding the summary judgment motion that duress constituted an element of each of Overall's claims. Although in some sense each of her tort claims contains an element of "duress," the precise injury that she purportedly suffered until 1991—memory suppression—does not alone constitute actionable duress *within the meaning of those torts*. In other words, Overall has not alleged that she was continually subjected to the tortious conduct which constitutes false imprisonment, assault, or intentional infliction of emotional distress since 1949. Accordingly, she has not suffered from a "continuous wrong" within the meaning of the duress tolling doctrine since she left her father's home in Texas, and we cannot toll the limitations period for duress beyond 1949. We address each of her claims in detail.

*False imprisonment.* Plaintiff contends that she was confined to her father's home and the convent schools as a result of her father's "violent threats and acts" which prevented her from calling for help. However, the duress that allegedly prevented plaintiff from escaping from false imprisonment ended in 1949, when her mother took her to New York. Even if her father's threats caused her to repress memories of those acts, any adverse effects on her memory cannot be considered a "continuous wrong" that is an extension of her false imprisonment claim. If we accepted plaintiff's definition of duress as only the *effects* of her father's tortious conduct, we would ignore the other element of duress—tortious conduct—that is also required to prove the tort of false imprisonment.

Furthermore, if we adopted Overall's one-sided definition of "duress" for the purposes of tolling, we would also have to accept that definition for purposes of defining the duration of the tort itself. Under Overall's theory, then, her false imprisonment claim would span from 1949 to 1991—a patently absurd conclusion.

Properly interpreted, duress tolling is applicable to a much more limited extent in Overall's case. Based on the alleged facts and proffered evidence, her cause of action for false imprisonment would have first accrued in 1947, when she began to live with her father. The statute of limitations would not have begun to run on her false imprisonment claim until two years later, when she moved to New York.[12]

*Assault and battery.* Plaintiff also argues that "duress" is an element of her claims of assault and battery, because her father forced her through threats and violence to undergo an unwanted touching. However, she was not subjected to the threat of an unwanted touching (that is, the duress that constitutes an element of assault and battery) after 1949. Even if Overall suffered memory repression resulting from a series of assaults committed between 1947 and 1949, she was not subjected to continuous assaults through 1991. Again, the continuing duress (in the form of threats and violence) that Overall allegedly endured while she lived in Texas tolled the statute of limitations as to her earlier claims of assault, but only until 1949.

*Intentional infliction of emotional distress.* Plaintiff argues that she suffered emotional distress as the direct result of her father's physical and emotional abuse. As with Overall's other claims, however, the *infliction* of that duress concededly ended in 1949. That Overall still bears scars from abuse inflicted more than forty years ago

---

N.Y.S.2d 713. This case, by contrast, reaches us on appeal from a grant of summary judgment after discovery has already closed. Furthermore, in both New York cases the state trial court ordered the plaintiff to specify "whether any [coercive or threatening] statements were made or conduct occurred after plaintiff attained the age of majority." *Anonymous*, 154 Misc.2d at 57, 584 N.Y.S.2d 713; *see Pagan*, N.Y.L.J., Dec. 11, 1992, at 35. Because Overall does not allege

that her father engaged in any abusive or threatening behavior after 1949, neither *Pagan* nor *Anonymous* supports her position.

12. The limitations period for all three of her claims was further tolled by reason of infancy, and expired in 1965, two years after she reached age twenty-one. *See supra* Section II.B.

speaks to the severity of that duress, but not to its continuing nature. Furthermore, it would make little sense to permit indefinite tolling for this tort *solely* on the grounds that the effects of the distress have persisted for 45 years, when (for example) a person whose hand was chopped off in an accident 45 years ago cannot similarly maintain suit on the grounds that he still suffers the effects of that injury. Yet that would be the logical result of characterizing her father's abuse as a "continuous wrong."

### III. CONCLUSION

To summarize:

1. Overall's claims are subject to a two-year limitations period which was tolled until she reached age twenty-one, pursuant to N.Y.Civ.Prac.Act §§ 50(1) and 60, which were in effect at the time of the alleged abuse.

2. Because Overall has not alleged, much less presented any evidence of, tortious conduct by her father after 1949, she cannot establish that she was subject to a "continuous wrong" that would toll the limitations period for duress, beyond the date of her majority.

Accordingly, we affirm.