Snyder v. Eno, et al.                    CV-92-287-M    09/30/97

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Jennifer Snyder,

    Plaintiff

    v.                                    Civil No. 92-287-M

Michael Eno, Brian Erskine,
Mascoma Valley Regional School District,
SAU #62, SAU # 32, David Miller, John Carr,
Daniel Whitaker, William Bellion,
Terri Pelletier, Richard Bresset,
and Patricia Rocke,

    Defendants


**O R D E R**


Jennifer Snyder was a student in the Mascoma Valley Regional School District ("MVRSD") from seventh through twelfth grade. She alleges that when she was in seventh grade, Michael Eno, a teacher and coach, began what turned into a campaign of sexual harassment, physical and verbal assaults, and exploitation that continued over the next several years. The conduct in which Eno is alleged to have engaged is profoundly disturbing, and includes, among other things, making public comments in class about plaintiff's menstruation, physically striking her, routinely inviting her to his home and allowing her to drive his car in order to earn her trust and affection, engaging her in conversations about oral sex and methods by which to please male lovers, exposing himself to plaintiff, encouraging her to purchase alcohol as a minor, freely discussing his sexual

encounters with other women and his sexual fantasies involving plaintiff's high school classmates, and repeatedly making demeaning and derogatory comments about plaintiff's physical appearance. In later years, plaintiff says she was subjected to a similar pattern of harassment, manipulation, and torment by Brian Adams, one of her athletic coaches.

Defendant Richard Bresset, also one of plaintiff's former teachers, is alleged to have repeatedly touched plaintiff in an inappropriate and sexual manner and, on at least one occasion, to have dropped to his knees, rested his head in plaintiff's lap, and begged her to "have sex with him just one time." Plaintiff also claims that he would often purposefully position himself in a way that allowed him to look down her blouse or up her skirt.

Plaintiff claims that the other named defendants were aware (or should reasonably have been aware) of the harassment to which she was being subjected while a student in the MVRSD, yet they failed to take any steps to assist or protect her. Plaintiff's allegations, set forth in detail in her consolidated objection to the various dispositive motions submitted by defendants, paint a distressing picture of a school district in which several teachers and coaches routinely engaged in sexual relationships

2

with their students, exposed others to years of sexual harassment and/or physical abuse, and actively encouraged students to engage in unquestionably inappropriate and, at times, unlawful conduct. Meanwhile, other teachers and school administrators allegedly failed to take any remedial steps, despite actual or, at a minimum, constructive knowledge of their colleagues' ongoing conduct. Plaintiff asserts that as a result of what defendants' did or failed to do, including their failure to intervene to stop her abusers' conduct, she has suffered severe and lasting injuries.

In her three count complaint, plaintiff sets forth claims under 42 U.S.C. § 1983, Title IX of the 1972 Educational Amendments, and a state common law negligence claim, over which she asks the court to exercise supplemental jurisdiction. Presently pending before the court are several motions to dismiss and/or for summary judgment, in which various defendants argue that plaintiff's suit is barred by the statute of limitations.

## Discussion

Jennifer Snyder graduated from the Mascoma Valley Regional High School on June 16, 1989.[1] She filed this civil action nearly three years later, on June 15, 1992. Defendants claim that she has alleged no actionable conduct within the pertinent period of limitations and, therefore, move to dismiss her claims as untimely.

### I.  Legal Background - "Actionable Conduct"

A.  42 U.S.C. § 1983.

Count 1 of plaintiff's complaint sets forth claims under 42 U.S.C. § 1983, under which "an aggrieved individual may sue persons who, acting under color of state law, abridge rights, immunities, or privileges created by the Constitution or laws of the United States." Johnson v. Rodriguez, 943 F.2d 104, 108 (1st Cir. 1991). A number of courts have addressed the issues raised by plaintiff and concluded that students do have a constitutionally protected liberty interest in being free from physical abuse by public school employees. Those courts have also concluded a § 1983 action is a proper means by which to seek

_____

[1] Defendants claim that plaintiff graduated on either June 14th or 15th. However, viewing the facts alleged (and properly supported) in the light most favorable to plaintiff, the non-moving party, the court will assume for the purposes of this order that plaintiff graduated on June 16, 1989.

4

compensation for injuries stemming from such abuse.  See, e.g.,
Doe v. Taylor Ind. School District, 15 F.3d 443, 450-52 (5th Cir.
1994); Stoneking v. Bradford Area School District, 882 F.2d 720,
725-27 (3rd Cir. 1989).

Generally speaking, to prevail on the merits of her § 1983
claims, plaintiff must demonstrate that the individually named
defendants acted under color of state law when they deprived her
of constitutionally protected rights (either by affirmatively
harassing and/or assaulting her or by acting with deliberate
indifference to her rights in failing to protect her from such
conduct).  With regard to the institutional defendants, plaintiff
must demonstrate the existence of some custom or policy
attributable to those defendants and show that, through
defendants' deliberate conduct, the custom or policy was the
moving force behind the deprivation of her constitutional rights.
See Board of County Comm'rs v. Brown, 117 S.Ct. 1382, 1388
(1997).  As the Court of Appeals for the First Circuit has noted:

> Courts have set forth two requirements for maintaining
> a section 1983 action grounded upon an unconstitutional
> municipal custom.  First, the custom or practice must
> be attributable to the municipality.  That is, it must
> be so well-settled and widespread that the policymaking
> officials of the municipality can be said to have
> either actual or constructive knowledge of it yet did
> nothing to end the practice.  Second, the custom must

5

have been the cause of and the moving force behind the deprivation of constitutional rights.

Roma Construction Co. v. aRusso, 96 F.3d 566, 575 (1st Cir. 1996) (citations and internal quotation marks omitted). Accord Swain v. Spinney, 117 F.3d 1, 10 (1st Cir. 1997).


B.    Title IX.

Count 2 of plaintiff's complaint alleges violations of Title IX of the 1972 Educational Amendments, which prohibits sexual discrimination by educational programs which receive federal financial assistance. 20 U.S.C. § 1681. It is well established that the provisions of Title IX are enforceable through an implied private right of action. See Cannon v. University of Chicago, 441 U.S. 677, 703 (1979). Here, plaintiff claims that defendants violated Title IX by exposing her to both quid pro quo sexual harassment and a hostile learning environment.

Title IX does not, however, expressly provide that sexual harassment constitutes discrimination under the statute. Accordingly, as previously observed by this court (Devine, J.):

> [C]ourts have looked to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., which prohibits employment discrimination, when interpreting Title IX. Specifically, courts have looked to Title VII when evaluating Title IX claims for sexual

6

> harassment brought by employees of educational institutions. In addition, the Supreme Court has looked to Title VII principles for guidance in the course of its discussion of whether a student who is sexually harassed by a teacher is entitled to a damage remedy under Title IX.

Doe v. Oyster River Cooperative School District, ___ F.Supp. ___, No. C-95-402-SD, slip op. at 9-10 (D.N.H. August 25, 1997) (citations omitted).

Applying principles borrowed from Title VII jurisprudence, the Supreme Court has held that Title IX prohibits teachers from sexually harassing students. Franklin v. Gwinnett County Public Schools, 503 U.S. 60, 75 (1992). Similarly, other courts have concluded that Title IX prohibits conduct which creates a sexually hostile learning environment. See, e.g., Brown v. Hot. Sexy & Safer Productions, Inc., 68 F.3d 525, 540 (1st Cir. 1995), cert. denied, 116 S.Ct. 1044 (1996).[2]

---

There is, however, some disagreement among the circuits concerning the appropriate standard to be applied when assessing a school district's liability under Title IX when teachers abuse students. Courts have yet to agree whether Title VI or Title VII of the Civil Rights Act of 1964 provides the relevant standard. Compare Canutillo Indep. School Dist. v. Leija, 101 F.3d 393, 398-400 (5th Cir. 1996) (acknowledging, without holding, that Title IX, like Title VI, may require the plaintiff to demonstrate that the school district acted with discriminatory intent and actually participated in the discriminatory conduct), cert. denied, 117 S.Ct. 2434 (1997), with Kinman v. Omaha Public School Dist., 94 F.3d 463, 469 (8th Cir. 1996) (adopting Title VII's "knew or should have known" standard for school district

7

II.  Statute of Limitations

A.   The Applicable Limitations Period.

Because neither Title IX nor § 1983 contains a limitations provision, the court must borrow the most closely analogous state statute of limitations.  See Wilson v. Garcia, 471 U.S. 261, 276-80 (1985); Street v. Vose, 936 F.2d 38, 39 (1st Cir. 1991); Nelson v. University of Maine System, 914 F.Supp. 643, 648-50 (D.Me. 1996).  In this case, the applicable limitations period is found in New Hampshire Revised Statutes Annotated ("RSA") § 508:4, I, which establishes a three year limitations period for personal actions.[3]

---

liability in a hostile educational environment case).  The Court of Appeals for the First Circuit appears to have adopted Title VII's constructive knowledge standard.  See Lipsett v. University of Puerto Rico, 864 F.2d 881, 901 (1st Cir. 1988).

At this juncture, the court need not address that issue, nor need it determine whether the individually named defendants can be liable for monetary damages under Title IX.

RSA 508:8 affords minors a two-year period within which to commence legal or equitable actions after they reach the age of majority.  Plaintiff turned 18 on January 17, 1989.  Accordingly, she would have had until January 17, 1991, to commence any action based upon claims which accrued while she was a minor.  As noted above, however, she did not commence this action until June 15, 1992.

Likewise, plaintiff is not aided by the 6-year statute of limitations which was in effect in New Hampshire prior to July 1, 1986.  The New Hampshire Supreme Court has held that "a plaintiff who alleges an injury based on a defendant's conduct that occurred prior to July 1, 1986, but where either the injury or its cause was not discovered until sometime after that date,

8

Therefore, to avoid the limitations bar in this case, plaintiff must allege and properly support facts which show that defendants engaged in some actionable conduct after June 15, 1989 (i.e., within the three-year period preceding the filing of her complaint) or that the pertinent statute of limitations was tolled for a period sufficient to make her complaint timely. Alternatively, she must allege and properly support facts which show that it was not until after June 15, 1989, that she knew (or had reason to know) that she had been injured by defendants' conduct. That is to say, plaintiff might attempt to demonstrate that although her claims "arose" prior to June 15, 1989, they did not "accrue" until some time within the limitations period.

---

would have the benefit of the six-year statute of limitations and the common law discovery rule." <u>Conrad v. Hazen</u>, 140 N.H. 249, 252 (1995) (emphasis supplied). For reasons discussed below, it does not appear that plaintiff is entitled to the benefit of the common law discovery rule. In any event, applying New Hampshire's former six-year statute of limitations would open only a limited temporal window for plaintiff: between June 15, 1986 (i.e., six-years prior to the filing of this action) and July 1, 1986 (the date on which the six-year period of limitations was amended to three-years). Defendants claim that plaintiff was on summer vacation for most, if not all, of that period and, therefore, not subject to any actionable conduct on their part. Plaintiff has failed to make any specific allegations concerning actionable conduct that occurred within that time frame.

B.    The Conduct at Issue.

Although plaintiff's complaint and her consolidated
objection describe in detail the nature of the harassment to
which she was subjected, they fail to specifically identify the
dates on which any of defendants' wrongful conduct allegedly
occurred.  Instead, plaintiff's pleadings speak only in very
general terms when identifying the times or the academic years
during which she claims to have been harassed.  It is apparent,
however, that as to all defendants except Eno, the harassment
(and, necessarily, the failure to stop that harassment) ceased
when plaintiff graduated on June 16, 1989.  Consequently, the
court's limitations analysis necessarily turns upon an
examination of defendants' conduct during an exceedingly short
period of time: between June 15 and June 16, 1989.[4]

_____

        Plaintiff claims that she continued to have contact with
Eno following her graduation.  It is, however, important to note
that defendants, including Eno, are not liable to plaintiff under
§ 1983 or Title IX for conduct that occurred after her
graduation.  While plaintiff may very well have other common law
and statutory causes of action against defendants for such
conduct, she cannot reasonably claim that, following her
graduation, defendants acted under color of state law (for § 1983
purposes) or subjected her to an unlawfully discriminatory
educational environment (for Title IX purposes).  See, e.g.,
Martinez v. Colon, 54 F.3d 980, 986 (1st Cir. 1995) ("In general,
section 1983 is not implicated unless a state actor's conduct
occurs in the course of performing an actual or apparent duty of
his office, or unless the conduct is such that the actor could
not have behaved in that way but for the authority of his
office.").

10

C.    Accrual of Plaintiff's Causes of Action.

Although federal courts borrow the most analogous limitation period from state law in § 1983 and Title IX cases, federal common law provides the standard for determining when a cause of action accrues.  Guzman-Rivera v. Rivera-Cruz, 29 F.3d 3, 4-5 (1st Cir. 1994); Rivera-Muriente v. Agosto-Alicea, 959 F.2d 349, 353 (1st Cir. 1992).  Under federal law, a plaintiff's § 1983 cause of action accrues, and the borrowed limitations period begins to run, when the plaintiff knows, or has reason to know, that he or she has been injured by the defendant's conduct.  See McIntosh v. Antonino, 71 F.3d 29, 34 (1st Cir. 1995) ("Under federal law, accrual starts when the plaintiff 'knows, or has reason to know, of the injury on which the action is based.'") (citation omitted). The same is true with regard to a Title IX claim.  See Nelson, 914 F.Supp. at 650 (citing Calero-Colon v. Betancourt-Lebron, 68 F.3d 1, 3 (1st Cir. 1995)).

Notwithstanding plaintiff's arguments to the contrary, her claims against defendants accrued on or before her graduation, when she experienced the emotional distress necessarily associated with defendants' undeniably outrageous alleged conduct.  Plaintiff does not claim that she suppressed memories of her abuse, nor does she claim that she was unaware that she

11

was injured each time she was subjected to ongoing acts of abuse. Instead, she claims that it was not until several years after her graduation that she fully appreciated the extent of her injuries. Plaintiff's memorandum (document no. 207) at 46-47 (claiming that plaintiff did not appreciate the nature and breadth of her injuries until approximately 1991, when she began to suffer from anorexia, or perhaps even as late as 1992, when she entered counseling).

The relevant inquiry is not, however, when plaintiff understood the full magnitude of her injuries. Rather, the pertinent date is when plaintiff knew (or reasonably should have known) that she sustained some actionable harm as a result of defendants' conduct. As the Court of Appeals for the First Circuit has observed in the Title VII context:

> It is beside the point that [plaintiff] continued to feel the effects of [defendant's wrongful conduct] in 1984 and beyond. In general, Title VII's temporal restrictions are measured from the occurrence of a triggering event; that the event's sequelae linger does not coterminously extend the limitations period. In the rather modest garden where continuing violation jurisprudence may lawfully flourish, courts must be careful to differentiate between discriminatory acts and the ongoing injuries which are the natural, if bitter, fruit of such acts.

Jensen v. Frank, 912 F.2d 517, 523 (1st Cir. 1990).

12

In this case, the alleged abusive conduct was outrageous by any measure, and was so egregious that plaintiff knew, or reasonably should have known, that she was being injured by that conduct as it occurred. She does not seem to disagree. For example, plaintiff acknowledges that she was hurt and humiliated to the point that she cried when Eno told her that she was ugly, and when he teased and demeaned her. Plaintiff's deposition, Vol II at 128, 152. Likewise, plaintiff's expert testified at deposition that plaintiff was "embarrassed and hurt" when defendants verbally assaulted and insulted her. Deposition of Robert J. Shoop (afternoon session), at 36. See also N.H. State Police Report, dated November 8, 1993 at 2 (noting that plaintiff acknowledged that she was embarrassed by Eno's public comments about her menstrual cycle). She was similarly injured when Eno purposefully struck her with a softball and when he knocked her to the ground while she was exercising at an athletic practice session.

Having determined that plaintiff's claims "accrued" when defendants engaged in the alleged acts of harassment and/or assault chronicled in plaintiff's papers, the critical question becomes whether she filed this action within three years of any such actionable conduct. In response to defendants' motions for

13

summary judgment, however, plaintiff has not specifically
identified any actionable conduct by any defendant within the
three-year period immediately preceding the filing of this suit.
Her complaint speaks to the timing of defendants' conduct only in
vague and general terms.  And, although her memorandum in
opposition to summary judgment (and the accompanying exhibits)
are more detailed, they too fail to specifically identify any
actionable conduct on the part of defendants on or after June 15,
1989.[5]

C.    Continuing Violations.

Although she does not directly address the theory of
continuing violations, plaintiff does suggest that her claims may
not be time-barred because defendants' underlying wrongful
conduct constituted an unbroken series of related violations of
her federal constitutional and statutory rights.  Plaintiff's
failure to develop this line of reasoning was probably
purposeful, as it does not appear to advance her cause.
Nevertheless, the court should address the concept of continuing
violations, if only briefly, since it might arguably apply.

_____

Likewise, she has failed to identify any specific
instances of actionable conduct on defendants' part from June 15,
1986 to July 1, 1986, the short period of time during which the
six-year statute of limitations might arguably apply.

14

Continuing violations may appear in either of two distinct variants.

> The first incarnation encompasses serial violations, that is, violations which comprise a number of discriminatory acts emanating from the same discriminatory animus, each of which constitutes a separate wrong actionable under Title VII. To give purchase to this type of continuing violation, at least one act in the series must have occurred within the limitations period.

* * *

> The other method by which a plaintiff can establish a continuing violation is by demonstrating the existence of a systemic violation. A systemic violation has its roots in a discriminatory policy or practice; so long as the policy or practice itself continues into the limitation period, a challenger may be deemed to have filed a timely complaint.

Lawton v. State Mutual Assurance Co., 101 F.3d 218, 221-22 (1st Cir. 1996) (citations and internal quotation marks omitted). Again, however, in determining whether plaintiff's complaint was filed in a timely manner, the focus must be on the occasion(s) of defendants' discriminatory conduct and plaintiff's resulting injuries, not the date on which the full extent of her injuries might have become evident. See Muniz-Cabrero v. Ruiz, 23 F.3d 607, 611 (1st Cir. 1994) ("the proper focus in continuing violation analysis is on the time of the discriminatory act, not the point at which the consequences of the act became painful.")

15

(emphasis in original) (citation and internal quotation marks omitted).

1.   Serial Violation.

Plaintiff cannot avoid the limitations bar by invoking the concept of a serial continuing violation because she has failed to allege that defendants engaged in at least one act in that series within the pertinent period.  While each individual act of harassment may be deemed to have emanated from the same discriminatory animus, plaintiff has not identified any such acts which occurred on June 15 or June 16 of 1989 (or between June 15 and July 1, 1986).  It is insufficient for plaintiff merely to allege that defendants perpetrated a series of actionable wrongs against her while she was a student and then point out that she filed her action within three years of graduating from high school.  She must identify at least one actionable wrong under either Title IX or § 1983 within the limitations period.  So, for example, if all of defendants' wrongful conduct (whether through action or inaction) occurred while plaintiff was in seventh grade and then ceased, she could not, without more, legitimately claim that the violation of her rights continued until she graduated nearly six years later.  Similarly, for the reasons discussed

16

above, plaintiff cannot rest her federal claims on conduct that allegedly occurred after her graduation.

2.  Systemic Violation.

In order to bring a timely claim for a systemic continuing violation, plaintiff must identify a discriminatory policy that caused her injury. Additionally, she must demonstrate that both the discriminatory policy and her injury continued into the limitations period (i.e., after June 15, 1989). See Lawton v. State Mutual Life Assur. Co., 101 F.3d at 222; Mack v. Great Atlantic and Pacific Tea Co., Inc., 871 F.2d 179, 183 (1st Cir. 1989). "The hallmark of a systemic violation is the presence of actual continued injury to the plaintiff." Bonollo Rubbish Removal, Inc. v. Town of Franklin, 886 F.Supp. 955, 959 (D.Ma. 1995).

In her complaint, plaintiff does facially allege the existence of a discriminatory policy in the MVRSD which caused her harm:

> The deprivation of Plaintiff's constitutional rights are [sic] the direct and proximate result of the official policies, customs and practices of the Defendant Mascoma Valley Regional School District as adopted and practiced by the Defendants Miller, Carr and Whitaker. These policies and practices are the result of deliberate choices by these Defendants which

17

> resulted in the deprivation of Plaintiff's
> constitutional rights. These policies and practices
> included discouraging teachers, administrative
> personnel, students and others from reporting sexual
> misconduct by teachers toward students.

Complaint at para. 47. In response to defendants' dispositive motions, however, plaintiff has provided scant support for the existence of such a discriminatory policy. She merely alleges that because a number of the defendants acted in a like manner (i.e., failed to report the fact that she was being harassed), their conduct must necessarily have been the product of some official custom or policy of the MVRSD. At this stage of the litigation, more is necessary. See generally, Roma Construction, 96 F.3d at 575; Swain, 117 F.3d 10. Plaintiff cannot merely rest upon unsupported allegations, conclusory statements, and unlikely inferences.

> The test for summary judgment is steeped in reality.
> Although the remedy must be withheld if material facts
> are authentically disputed, there is a burden of
> production: the party opposing the motion must set
> forth specific facts showing that there is a genuine
> issue for trial. We have interpreted Rule 56 to mean
> that the evidence illustrating the factual controversy
> cannot be conjectural or problematic; it must have
> substance in the sense that it limns differing versions
> of the truth which a factfinder must resolve. If the
> evidence is merely colorable, or is not significantly
> probative, summary judgment may be granted. Even in
> cases where elusive concepts such as motive or intent
> are at issue, summary judgment may be appropriate if
> the non-moving party rests merely upon conclusory

18

allegations, improbable inferences, and unsupported speculation.

Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citations and internal quotation marks omitted). Accord King v. Town of Hanover, 116 F.3d 965, 968 (1st Cir. 1997).

Plaintiff has failed to proffer adequate evidence in support of her claim that the MVRSD had a custom or policy of affirmatively discouraging employees from reporting instances of sexual abuse and/or harassment of students by teachers. Accordingly, she cannot establish the requisite elements of a systemic continuing violation.

Moreover, plaintiff has failed to demonstrate that she actually sustained some harm as a result of the alleged custom or policy within the limitations period. Again, it is critical to distinguish between the date on which plaintiff was injured as a result of such a policy and the period of time over which she felt the lingering effects of that injury. Here, plaintiff must allege (and properly support her claim) that she was injured as a result of the alleged custom or policy on June 15 and/or 16, 1989 (or between June 15 and July 1, 1986). She has not done so.

19

This is not an employment situation, in which an otherwise qualified employee might legitimately claim that he or she was continuously harmed each day that an employer followed an unlawful policy (e.g., continually precluding the employee from being promoted because of race or gender). In that situation, the policy itself is the continuing source of the harm. Here, the policy, as alleged, merely facilitated the commission of an independent harm: it arguably allowed Eno and others to harass plaintiff without fear of discipline and, so, might be said to have contributed to the abuse itself. If such an independent harm -- the harassment -- did not occur within the limitations period, it is difficult to see how plaintiff might legitimately claim that she was injured by such a policy within that period. Perhaps more importantly, even if such an argument were possible, plaintiff has failed to advance it.

D.    Tolling the Statute of Limitations - the Discovery Rule.

Although accrual of a cause of action under Title IX and/or § 1983 is governed by federal law, the court applies the law of the forum state in determining whether the statute of limitations is appropriately tolled. See Hardin v. Straub, 490 U.S. 536, 540 (1989). New Hampshire law is clear: the discovery rule does not operate to toll the statute of limitations until the full measure

20

of plaintiff's injuries are known if, at some earlier time, plaintiff sustained a real and measurable injury as a result of defendant's conduct. So, the statute of limitations is not tolled when, at the time of a defendant's conduct, the plaintiff sustained some injury which served to notify her of a violation of her rights, even if the extent of the plaintiff's injuries were not fully appreciated until some later date. See, e.g., Rowe v. John Deere, 130 N.H. 18, 22 (1987). See also Conrad v. Hazen, 140 N.H. 249, 252 (1995) ("If the original injury was sufficiently serious to apprise the plaintiff that a possible violation of her rights had taken place, the common law discovery rule would not apply.") (citation and internal quotation marks omitted).

As discussed above, plaintiff was (or should have been) fully aware that the conduct in which Eno, Adams, Bresset, and others allegedly engaged caused her immediate and actionable physical harm and emotional distress. While plaintiff may not have appreciated the full extent or seriousness of the harm when it occurred or the nature of the emotional injuries she might later experience, she was certainly aware that her rights had been violated and she had suffered injuries when she was physically assaulted and when defendants demeaned, humiliated,

21

and tormented her with their verbal assaults.  See generally, Rowe v. John Deere, supra.

Plaintiff's remaining arguments regarding tolling of the statute of limitations are unavailing and, in any event, are inadequately developed and largely unsupported by the record. In the end, therefore, the court is constrained to conclude that plaintiff is not entitled to the benefit of any tolling of the applicable statute of limitations nor is she entitled to the benefit of any equitable estoppel.[6]

_____

Plaintiff also argues that all defendants should be equitably estopped from asserting the statute of limitations as a bar to her claims.  In support of that assertion, plaintiff claims that Eno (and possibly Adams) threatened to terminate his relationship with her and even to "kill her" if she revealed the abusive nature of their relationship.  Once again, however, plaintiff's argument is based almost entirely upon conclusory statements, lacking in the requisite specificity.  For example, she has not articulated when the alleged threat(s) were made, the effect that they had upon her, and, ultimately, whether they actually caused her to delay the filing of this law suit. Moreover, she has failed to demonstrate that her action was filed within a reasonable time after she decided to proceed despite the alleged threats.  In short, plaintiff has failed to present sufficient or properly supported facts to establish a claim to relief under the doctrine of equitable estoppel.

Nevertheless, because of the compelling nature of plaintiff's underlying assertions of fact, the court is inclined to afford her another opportunity to properly develop an equitable estoppel claim, if she can.  Accordingly, on or before October 31, 1997, plaintiff may submit a motion to reconsider, in which she fully develops, and properly supports, an equitable estoppel claim and, among other things, specifically identifies the defendants against whom equitable estoppel arguably applies

22

## Conclusion

The applicable statute of limitations in this action is (with the possible limited exception discussed earlier) three years. Plaintiff filed her complaint on June 15, 1992. Accordingly, in order to avoid dismissal of her claims as time barred, she must allege some actionable conduct on the part of defendants on or after June 15, 1989 (the eve of her high-school graduation) or between June 15 and July 1, 1986. She has failed to do so. Nor has she demonstrated that either a systemic or serial continuing violation theory is applicable to this case.

---

and why (e.g., is William Bellion equitably estopped to assert the statute of limitations because of Eno's alleged threats?). See generally Lakeman v. LaFrance, 102 N.H. 300, 304 (1959) (the purpose of equitable tolling [and by implication, equitable estoppel] is to "promote the equity and justice of the individual case by preventing a party from asserting his rights under a general technical rule of law, when he has so conducted himself that it would be contrary to equity and good conscience to avail himself of his legal defense") (citation and internal quotation marks omitted)(emphasis supplied). See also Overall v. Estate of Klotz, 52 F.3d 398 (2d Cir. 1995) (plaintiff must show that defendant wrongfully induced him to refrain from filing a timely complaint and that plaintiff actually filed complaint within a reasonable time after facts giving rise to estoppel ceased); Murphy v. Merzbacher, 697 A.2d 861 (Md. App. Ct. 1997) (plaintiff must demonstrate that suit was initiated within reasonable time after threats ceased); Anonymous v. Anonymous, 584 N.Y.S.2d 713 (N.Y. 1992) (plaintiff must demonstrate both that the defendant's conduct caused him to forego commencing a timely action and that he was justified in relying upon such conduct or representations).

Moreover, plaintiff has failed to show that she is entitled to any tolling of the applicable statute of limitations, nor has she demonstrated that her causes of action under § 1983 and/or Title IX accrued at some date after June 15, 1989. Although plaintiff may not have appreciated the full extent to which she had been harmed by defendants' conduct for many months or even years following her high school graduation, she sustained a real and actionable injury on each occasion that defendants mistreated her to the point of inflicting physical harm or emotional distress while she was a student in the MVRSD. Unfortunately for plaintiff, she has not sufficiently alleged that any of that conduct occurred within the three years immediately preceding the filing of this action, or between June 15 and July 1, 1986. Consequently, the court is constrained to hold that her action was not filed in a timely manner.

For the foregoing reasons, defendants' motions to dismiss and/or for summary judgment on statute of limitations grounds (documents no. 165, 167, 174, and 182) are granted. All other pending motions are denied as moot. The court declines to exercise its supplemental jurisdiction with regard to plaintiff's common law negligence claims, which are dismissed without prejudice to refiling in state court. See 28 U.S.C. §

24

1367(c)(3).  The Clerk of the Court is instructed to enter judgment in accordance with this order.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

September 30, 1997

cc:  Edward M. Van Dorn, Jr., Esq.
     Kenneth G. Bouchard, Esq.
     Brian Adams
     Thomas H. Trunzo, Jr., Esq.
     James Q. Shirley, Esq.
     Joseph F. Daschbach, Esq.
     Donald E. Gardner, Esq.
     Bradley F. Kidder, Esq.
     Martha V. Gordon, Esq.
     Malcolm R. McNeill, Jr., Esq.
     David H. Bradley, Esq.
     Theodore Wadleigh, Esq.
     Donald P. LoCascio, Esq.